IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN ROBINSON, et al., | CASE NO. CV F 05-1258 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO DISMISS** (Doc. 70.) |
| vs. | |
| HENRY M. PAULSON, JR., Secretary, United States Department of Treasury, | |
| Defendant. | |

## INTRODUCTION

Defendant Henry M. Paulson, Jr., Secretary of the U.S. Department of Treasury,[1] seeks F.R.Civ.P. 12(b)(1) or (6) dismissal of more than 60 of plaintiffs'[2] specific employment discrimination and related claims on grounds that the claims were not administratively raised or exhausted or are similarly barred. The IRS seeks alternative F.R.Civ.P. 12(c) judgment on pleadings on plaintiffs' claims. Plaintiffs respond that their challenged claims are subsumed into properly exhausted claims and remain viable. This Court considered the IRS' alternative motions to dismiss and for judgment on the pleadings

---

[1] For ease and convenience, defendant Henry M. Paulson, Jr., Secretary of the U.S. Department of Treasury, will be referred to as "IRS" (Internal Revenue Service).

[2] Plaintiffs are Norman Alston ("Mr. Alston"), Tony Hawkins ("Mr. Hawkins"), Rudy Jackson ("Mr. Jackson"), Percy McIntosh ("Mr. McIntosh"), Kenneth Robinson ("Mr. Robinson") Rick Spight ("Mr. Spight"), Tyrone Watson ("Mr. Watson"), and Nicole Williams ("Ms. Williams") (collectively "plaintiffs").

1

on the record and VACATES the November 28, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES under F.R.Civ.P. 12(b)(1) most of plaintiffs' subject claims in the absence of timely administrative exhaustion or appeal or due to arbitration election.

## OVERVIEW

Plaintiffs are eight black current and former IRS employees who pursue discrimination, retaliation and hostile work environment claims under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq. Plaintiffs explain that their "claims generally consist of disparate treatment in promotion, performance evaluation and discipline" and retaliation. Plaintiffs originally filed this action pro se on October 4, 2005. After retaining counsel, plaintiffs proceed on their operative second amended complaint ("SAC"), filed July 20, 2006. The SAC alleges nearly 80 paragraphs[3] of specific claims of discrimination, retaliation and hostile work environment against the IRS. Plaintiffs generally allege a pattern of race discrimination at Fresno's IRS service center since 1971 based on disproportionately fewer black male employees receiving a disproportionately higher number of disciplinary actions.

The IRS seeks dismissal of more than 60 of plaintiffs' claims on grounds that this Court lacks jurisdiction in that plaintiffs: (1) failed to raise or exhaust administratively certain claims; (2) failed timely to appeal administrative decisions for certain claims; and (3) elected to arbitrate certain claims. Before addressing the specific claims which the IRS seeks to bar, this Court will discuss the standards applicable to the IRS alternative motions.

## F.R.Civ.P. 12(b)(1) MOTION TO DISMISS STANDARDS

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must be neither disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). A plaintiff bears the

---

[3] Further references to "paragraph" will be to enumerated SAC paragraphs.

burden to establish that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.

A F.R.Civ.P. 12(b)(1) attack on jurisdiction may be facial to confine inquiry to the complaint's allegations, or factual to permit a court to look beyond the complaint. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039-1040, n. 2 (9th Cir. 2003). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading. *Thornhill Publishing Co. v. General Telephone Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). In a factual challenge, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 210 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). In addition, a court "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### F.R.Civ.P. 12(b)(6) MOTION TO DISMISS STANDARDS

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that

the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### F.R.Civ.P. 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

F.R.Civ.P. 12(c) authorizes a motion for judgment on the pleadings: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003).

A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

The standards for deciding F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(c) motions are the same. *Great Plains Trust v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313, n. 8 (5th Cir. 2002). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes*, 278 F.3d at 420.

With these F.R.Civ.P. 12 standards in mind, this Court turns to Title VII administrative claim requirements.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1). "Title VII specifically requires a federal employee to exhaust his administrative remedies as a precondition to filing suit." *Vinieratos v. United States*, 939 F.2d 762, 768-769 (9th Cir. 1991) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1965 (1976)). "To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002).

**Pre-Litigation Title VII Process**

29 C.F.R. § 1614.105(a)(1) requires an aggrieved person who believes he/she has been discriminated against based on race or color to initiate, prior to filing a complaint, contact with an Equal Employment Opportunity ("EEO") counselor "within 45 days of the date of the matter alleged to be discriminatory" to "try to informally resolve the matter." Failure to comply with this regulation is "fatal to a federal employee's discrimination claim." *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting *Lyons*, 307 F.3d at 1105). The time limit to address a matter with an EEO counselor "is treated like a statute of limitations for filing suit." *Johnson v. U.S. Treasury Dept.*, 27 F.3d 415, 416 (9th Cir. 1994).

If the matter is unresolved, the employee must submit a formal administrative (EEO) complaint with the agency which allegedly discriminated within 15 days of the conclusion of pre-complaint processing. *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (citing 29 C.F.R. § 1614.105 (pre-complaint process); 29 C.F.R. § 1614.106 (individual complaints); *Leorna v. U.S. Dept. Of State*, 105 F.3d 548, 551 (9th Cir. 1997) (citing 29 C.F.R. § 1614.106). "The agency will dismiss a complaint that fails to comply with the applicable time limits or that raises a matter that has not been brought to the attention of a counselor." *Leorna*, 105 F.3d at 551 (citing 29 C.F.R. § 1614.107). The district court lacks jurisdiction in cases where a plaintiff "has never presented a discrimination complaint to the appropriate administrative authority." *Sommatino*, 255 F.3d at 708.

42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407 permit a Title VII complainant to file a federal district court action: (1) within 90 days of final agency action in the absence of an EEOC appeal, or within 90 days of receipt of the EEOC's final decision on appeal; or (2) after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken.

**Discrete Acts**

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061 (2002). Discrete acts of discrimination include discrimination in termination, failure to promote, denial of

transfer, and refusal to hire. *Ledbetter v. The Goodyear Tire & Rubber Co., Inc.*, __ U.S. __, 127 S.Ct. 2162, 2165 (2007).

The statutory term "employment practice" generally refers to a "discrete act or single" occurrence that takes place at a particular point in time. *Ledbetter*, __ U.S. __, 127 S.Ct. at 2169. A Title VII plaintiff is able only to file a charge to cover discrete acts that occurred within the appropriate time period." *Ledbetter*, __ U.S. __, 127 S.Ct. at 2169. The United States Supreme Court has further explained:

> The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.

*Ledbetter*, __ U.S. __, 127 S.Ct. at 2169.

Thus, a "discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885 (1977).

### Scope Of Ensuing Federal Court Action

The scope of the formal administrative complaint defines the permissible scope of a subsequent civil action. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (addressing claim under California counterpart to Title VII). Civil complaint allegations which are outside the administrative complaint's scope are barred for failure to exhaust. *Rodriguez*, 265 F.3d at 897; *see also Paige v. State of California*, 102 F.3d 1035, 1041 (9th Cir. 1996) (the "jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.") Where "a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, we have held that the district court does not have subject matter jurisdiction." *Sommatino*, 255 F.3d at 708.

"The district court has jurisdiction over any charges of discrimination that are 'like or reasonably related' to the allegations in the EEOC charge, or that fall within the 'EEOC investigation which can reasonably be expected to grow out the charge of discrimination.'" *Sommatino*, 255 F.3d at 708 (quoting

*Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) and *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). When an employee seeks judicial relief for incidents not listed in his original charge to the administrative agency, the judicial complaint my encompass discrimination "like or reasonably related to the allegations" of the agency charge, including "new acts" occurring during the pendency of the charge before the administrative agency. *Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir. 1995), *cert. denied*, 519 U.S. 836, 117 S.Ct. 110 (1996).

Courts are to construe EEOC charges with utmost liberality. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002). The Ninth Circuit Court Appeals has explained:

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B.*, 276 F.3d at 1100.

### The Merits Systems Protection Board Option

The Merit Systems Protection Board ("MSPB") is a quasi-judicial federal agency that adjudicates federal employee appeals of agency personnel decisions. *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998); *see* 5 U.S.C. §§ 1201, et seq.; *see also* 5 C.F.R. § 1200.1. The MSPB is authorized to review "adverse employment actions" of removal, more than 14-day suspensions, grade or pay reductions, and furloughs no more than 30 days. *Sloan*, 140 F.3d at 1259 (citing 5 U.S.C. § 7512(1)-(5); 5 C.F.R. § 1201.3). An appeal to MSPB must be filed within 30 days of the adverse employment action. *Sloan*, 140 F.3d at 1259 (citing 5 C.F.R. § 1201.22).

When a federal employee claims that he/she has been affected by both an "adverse employment action" and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB. *Sloan*, 140 F.3d at 1259. Such a case is referred to as a "mixed case complaint" to allege adverse employment action affected in whole or part by unlawful discrimination. *Sloan*, 140 F.3d at 1259 (citing 29 C.F.R. § 1614.302).

An appeal of an MSPB decision in a mixed case must be filed in a federal district court within 30 days. *Sloan*, 140 F.3d at 1261, n. 19 (citing 5 U.S.C. § 7703(b)(2); 5 C.F.R. § 1201.175).

**Union Grievances**

Title VII is implicated by the Federal Labor-Management Relations Act ("FLMRA"), 5 U.S.C. §§ 7101-7135, which governs the methods and manner by which a federal employee with exclusive union representation may challenge an adverse personnel decision by his/her employing agency. *Vinieratos v. United States*, 939 F.2d 762, 768 (9th Cir. 1991). Under the FLMRA, a federal employee who alleges employment discrimination must elect to pursue his claim under either statutory procedure or a union-assisted negotiated grievance procedure. *Vinieratos*, 939 F.2d at 768. An employee is unable to pursue both the statutory and union procedures, and his/her election is irrevocable. *Vinieratos*, 939 F.2d at 769; *see* 5 U.S.C. § 7121(d). "[U]nder 5 U.S.C. § 7121(d) and 29 C.F.R. § 1613.219(b), an employee who elects to file a grievance under a negotiated procedure which permits the grievance of discrimination claims must exhaust his or her administrative remedies through that procedure. An employee cannot exhaust his or her administrative remedies by filing an EEO claim or an MSPB appeal after electing to file a grievance." *Macy v. Dalton*, 853 F.Supp. 350, 355 (E.D. Cal. 1994).

With the above pre-litigation exhaustion procedures in mind, this Court turns to plaintiffs' claims which the IRS contends were not administratively raised or were untimely pursued:

**Mr. Robinson's Claims Not Administratively Raised**

The IRS hired Mr. Robinson in 1985 and terminated his employment in 2005. The IRS contends that Mr. Robinson's following claims are barred because he failed to present them administratively prior to filing this action:

**Paragraph 22** alleges that in 2000, Mr. Robinson was denied promotion to a GS-260-9/11/12 EEO specialist due to subjective criteria set by the selection committee.

**Paragraph 23** alleges that in February 2001, the acting branch chief reduced Mr. Robinson's evaluation from distinguished to satisfactory without justification.

**Paragraph 27** alleges that Mr. Robinson was issued a false job request from the personnel branch and was verbally disciplined for failure to respond timely although the request was a joke to harass him.

**Paragraph 28** alleges that a manager joked that a black actor who portrayed a sexual harasser in a training video was Mr. Robinson.

The IRS lacks record that Mr. Robinson contacted an EEO counselor, filed a formal administrative discrimination complaint, or exhausted his administrative remedies as to **Paragraph 22, 23, 27 and 28** claims.

Mr. Robinson fails to challenge meaningfully the IRS' contention to dismiss his **Paragraph 22, 23, 27 and 28** claims. As such, this Court DISMISSES Mr. Robinson's **Paragraph 22, 23, 27 and 28** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

### Mr. McIntosh's Claims Not Administratively Raised Or Exhausted

The IRS hired Mr. McIntosh in 1998. The IRS contends that Mr. McIntosh's following claims are barred because he failed to raise or exhaust them administratively:

**Paragraphs 31-36** allege that Mr. McIntosh was not selected for nine supervisory positions in the IRS' Examination Branch and was not selected for two additional supervisory positions in the IRS' Criminal Investigation Branch. Mr. McIntosh further alleges that shortly after he received his application for one position, the IRS initiated an addendum to change the "Selective Placement Factor" from one to two years to disqualify Mr. McIntosh. Mr. McIntosh claims that he was passed over although he was qualified.

Mr. McIntosh apparently contacted EEO counselors twice in the late 1990s about the use of ranking procedures and supervisory positions in the IRS' Examination Branch. The IRS lacks record of Mr. McIntosh's further exhaustion of administrative remedies as to **Paragraph 31-36** claims.

**Paragraph 37** alleges that in July 2000, Mr. McIntosh was denied a GS-233-12 labor relations position which was given to a lesser qualified non-black.

**Paragraph 38** alleges that in August 2000, Mr. McIntosh was denied a GS 160-09/11/12 EEO specialist position which was given to a lesser qualified non-black.

**Paragraph 39** alleges that in December 2000, Mr. McIntosh was promoted from a GS-9 to a GS-11 position after he was informed that the prior determination of his grade level was inaccurate.

**Paragraphs 40-42** allege that: (1) Mr. McIntosh's supervisor told him that she would not hire him for a job, although she could find no problem with Mr. McIntosh; (2) Mr. McIntosh never received a performance award although service center directors had publicly commended him and non-blacks, who performed at a lesser skill level, received performance awards; and (3) in November 2004, Mr.

McIntosh's supervisor attempted to suspend him for alleged misconduct but such allegations were groundless and the suspension was withdrawn.

The IRS lacks record that Mr. McIntosh contacted an EEO counselor, filed a formal administrative discrimination complaint, or exhausted his administrative remedies as to **Paragraph 37-42** claims.

Mr. McIntosh fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 31-42** claims. As such, this Court DISMISSES Mr. McIntosh's **Paragraph 31-42** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

### Mr. Watson's Claims Not Administratively Raised

The IRS hired Mr. Watson in 1980. The IRS contends Mr. Watson's following claims are barred because he failed to present them administratively prior to filing this action:

**Paragraphs 44 and 45** allege that although Mr. Watson applied for "countless" IRS positions, including three EEO counseling positions and an EEO specialist position, and was placed on the "Best Qualified List" during 1980-2000, Mr. Watson was not chosen. In November 2000, Mr. Watson filed an administrative discrimination complaint, Case No. TD 01-4057T, to claim race, color and sex discrimination in that he was not selected for an EEO specialist position in August 2000. The IRS lacks record that Mr. Watson contacted an EEO Counselor, filed an administrative discrimination complaint or exhausted administrative remedies as to denial during 1980-2000 of positions other than EEO specialist.

The IRS does not appear to challenge exhaustion as to the August 2000 EEO specialist claim and as such that claim remains viable. However, Mr. Watson fails to challenge meaningfully the IRS' contentions to dismiss his claims for denial of EEO counseling positions. As such, DISMISSES **Paragraph 44 and 45** claims for denial of positions other than the EEO specialist position in August 2000.

**Paragraph 46** alleges that when Mr. Watson requested a prime shift for a GS-10 compliance operation position, he was told he did not qualify for the shift although he had been selected for the position on swing shift.

Mr. Watson fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 46**

claim. As such, this Court DISMISSES Mr. Watson's **Paragraph 46** claim in the absence of administrative exhaustion to invoke this Court's jurisdiction.

**Paragraph 47** alleges that although Mr. Watson temporarily filled numerous supervisory positions, he was informed that he did not qualify for the positions permanently.

**Paragraph 48** alleges that after Mr. Watson satisfactorily worked as a temporary supervisor in the compliance operation department, his supervisory duties were removed and given to a non-black.

**Paragraphs 49 and 50** allege that in 2000, shortly after Mr. Watson filed at least one administrative complaint to allege failure to promote and train and retaliation, Mr. Watson was isolated from coworkers for more than a year and was demoted without explanation to harass and retaliate against him.

As to his **Paragraph 47, 48 and 50** claims, Mr. Watson notes that he filed a November 2003 administrative complaint, Case No. TD 04-2061, to claim discrimination for reprisal of prior EEO activity when:

1. The IRS did not advise Mr. Watson of transition procedures and violated the procedures by placing Mr. Watson in bargaining unit status and denying him permanent placement in a position;
2. On October 13, 2003, the IRS advised Mr. Watson that he was prohibited to work in his assigned EEO office;
3. The IRS ended Mr. Watson's detail as a manager in the compliance automated underreporter department only after a year in the detail;
4. Mr. Watson was issued an unjust mid-year assessment;
5. Mr. Watson was not assigned permanent and/or meaningful work when assigned to the EEO office;
6. Mr. Watson was not afforded the same opportunity as other managers;
7. Mr. Watson was not provided equal access to the training data base;
8. Mr. Watson did not receive his 2003 performance appraisal on the October 31, 2003 scheduled date;
9. Mr. Watson had difficulty to receive departure ratings from the IRS;

10. Mr. Watson was required to work outside the EEO office for approximately one year and received no training or direction; and

11. Mr. Watson was required to work in areas without proper training.

**Paragraph 47** alleges that Mr. Watson was told he did not qualify for permanent supervisor positions although he filled them temporarily. The **Paragraph 47** claim is not like or reasonably related to the allegations in Mr. Watson's administrative complaint, Case No. TD 04-2061, and does not fall within an administrative investigation which could have been reasonably expected to grow out of Mr. Watson's administrative complaint, Case No. TD 04-2061. As such, this Court DISMISSES Mr. Watson's **Paragraph 47** claim in the absence of administrative exhaustion to invoke this Court's jurisdiction.

**Paragraph 48** alleges that Mr. Watson's temporary compliance operation department supervisory duties were removed and given to others. **Paragraph 49** alleges that in 2000, Mr. Watson filed at least one EEO complaint to allege denial of promotion, failure to train and retaliation. **Paragraph 50** alleges that Mr. Watson was forced to work outside his assigned area, isolated and demoted to retaliate for his filing an EEO complaint. The **Paragraph 48-50** claims are like or reasonably related to the allegations in Mr. Watson's administrative complaint, Case No. TD 04-2061, and fall within an administrative investigation which could have been reasonably expected to grow out of Mr. Watson's administrative complaint, Case No. TD 04-2061. As such, this Court DENIES dismissal of Mr. Watson's **Paragraph 48-50** claims.

**Paragraph 51** alleges that although Mr. Watson had worked under his supervisor for less than 60 days, he was evaluated pending an EEO investigation and contrary to IRS procedure to require evaluation by a supervisor under whom an employee had worked for more than 60 days. The IRS lacks record that Mr. Watson contacted an EEO Counselor, filed an administrative discrimination complaint or exhausted administrative remedies as to **Paragraph 51** claims.

Mr. Watson fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 51** claim. As such, this Court DISMISSES Mr. Watson's **Paragraph 51** claim in the absence of administrative exhaustion to invoke this Court's jurisdiction.

///

**Mr. Jackson's Claims Not Administratively Raised**

The IRS hired Mr. Jackson as a clerk in February 1972. The IRS contends Mr. Jackson's following claims are barred because he failed to present them administratively prior to filing this action:

**Paragraphs 54-58** allege that shortly after February 2, 1972, when on a Machine Services detail, Mr. Jackson was denied operation of machines and incoming telephone calls, given menial tasks, subjected to racial slurs, and disciplined for petty infractions.

**Paragraph 63** alleges that in 1991, Mr. Jackson was denied training for GS-11 and GS-12 positions based on his race.

**Paragraphs 64 and 66** alleges that Mr. Jackson was denied a safety officer position at a higher grade in favor of a less qualified non-black.

**Paragraph 68** alleges that in 2001, Mr. Jackson complained to the IRS' EEO office after he received a lower performance evaluation.

**Paragraph 70** alleges that in or around the 2000s, he was embarrassed when introduced during a meeting with executives as a safety assistant although he had been a safety officer since 1991.

**Paragraph 71** alleges that Mr. Jackson involuntarily terminated his employment in 2006 due to intolerable and aggravated working conditions.

The IRS lacks record that Mr. Jackson filed an administrative discrimination complaint as to **Paragraphs 54-58, 63, 64, 66, 68, 70 and 71** claims. The IRS lacks a record of Mr. Jackson's involuntary termination.

Mr. Jackson fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 54-58, 63, 64, 66 and 68** claims. As such, this Court DISMISSES Mr. Jackson's **Paragraph 54-58, 63, 64, 66 and 68** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

As to his **Paragraph 70 and 71** claims, Mr. Jackson notes he sought EEO counseling on March 4, 2002. Mr. Jackson filed an administrative complaint, Case No. TD 04-2316, to allege that he was discriminated against based on race and retaliation for participation in the EEO process in that: (1) he was directed to train a female co-worker on his job duties to allow her to compete against him; (2) management systematically reduced his job responsibilities and role as a safety officer and transferred them to a female coworker; (3) his appraisal ratings were lowered and do not fully or accurately reflect

his positive accomplishments; and (4) he was continually passed over for promotions.

**Paragraph 70** alleges that Mr. Jackson was embarrassed when he was introduced at a meeting as a safety assistant. **Paragraph 71** alleges Mr. Jackson involuntarily terminated his employment due to intolerable and aggravated working conditions. The **Paragraph 70 and 71** claims are not like or reasonably related to the allegations in Mr. Jackson's administrative complaint, Case No. TD 04-2316, and do not fall within an administrative investigation which could have been reasonably expected to grow out the Mr. Jackson's administrative complaint, Case No. TD 04-2316.

This Court DISMISSES Mr. Jackson's **Paragraph 70 and 71** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

### Mr. Alston's Claims Not Administratively Raised

The IRS hired Mr. Alston in 1986. The IRS contends that Mr. Alston's following claims are barred because he failed to present them administratively prior to filing this action:

**Paragraph 73** alleges that the IRS breached a settlement agreement to increase Mr. Alston from a GS-9 grade to a GS-12 grade. Mr. Alston had filed a grievance through the National Treasury Employees Union ("NTEU") to claim that he (and others) performed duties beyond their pay grade.

The IRS notes that the case settled prior to arbitration, and the IRS agreed to promote Mr. Alston retroactively to a GS-11 grade. Mr. Alston signed a settlement agreement that resolution was "full and final" and that neither he nor NTEU will pursue another claim.

**Paragraph 74** alleges that an IRS manager said Mr. Alston was not smart enough to perform GS-12 level work.

**Paragraph 75** alleges that the IRS was forced to drop accusations made in 2004 that Mr. Alston had failed to file a correct tax return, a serious IRS violation.

The IRS lacks record that Mr. Alston's filed an administrative discrimination complaint as to **Paragraph 73-75** claims.

Mr. Alston fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 73-75** claims. As such, this Court DISMISSES Mr. Alston's **Paragraph 73-75** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

/ / /

**Ms. Williams' Claims Not Administratively Raised**

The IRS hired Ms. Williams as a GS-4 tax examiner in 1985. The IRS contends that Ms. Williams' following claims are barred because she failed to present them administratively prior to filing this action:

**Paragraphs 77 and 80** allege that Ms. Williams trained thousands of IRS employees who were promoted over her based on Ms. Williams' race and that she was never promoted in 21 years.

**Paragraphs 78 and 79** allege that until 2000, Ms. Williams consistently received 3 (successful) or 4 (fully successful) performance ratings but rarely receive 5 (outstanding) ratings and was not promoted after she started to receive 5 (outstanding) ratings in 2000.

**Paragraph 81** alleges that in 1990, Ms. Williams began to complain of racial discrimination at the IRS and as a result, management labeled her a troublemaker.

**Paragraph 82** alleges that the IRS delayed four months to grant Ms. Williams' 1990 request to change to part-time status although a non-black's similar request was granted in 48 hours.

**Paragraph 83** alleges that Ms. Williams was subjected to racial slurs by fellow IRS employees.

**Paragraph 84** alleges that a white supervisor told her not to worry about being written on with a black permanent marker because "you wouldn't be able to see it anyway."

**Paragraph 85** alleges that Ms. Williams was twice physically assaulted by two non-black employees because of her race.

The IRS lacks record that Ms. Williams contacted an EEO Counselor, filed an administrative discrimination complaint or exhausted administrative remedies as to **Paragraph 77-85** claims.[4]

Ms. Williams fails to challenge meaningfully the IRS' contentions to dismiss her **Paragraph 77-85** claims. As such, this Court DISMISSES Ms. Williams **Paragraph 77-85** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

**Mr. Spight's Claims Not Administratively Raised**

The IRS hired Mr. Spight as a seasonal employee in 1990. The IRS contends that Mr. Spight's following claims are barred because he failed to present them administratively prior to filing this action:

---

[4] Ms. Williams filed in this Court an action entitled *Williams v. Snow*, Case No. CV F 01-6477 to allege a supervisor touched her but that action was dismissed with prejudice.

**Paragraph 87** alleges that Mr. Spight was discharged from employment in 2005.

**Paragraph 88** alleges that in 2005, Mr. Spight was denied an opportunity to test for IRS hiring based on his race.

**Paragraph 89** alleges that although Mr. Spight attended 2005 orientation for IRS employment, he was labeled a "no show" on his application and not hired.

The IRS lacks record that Mr. Spight filed an administrative discrimination complaint as to **Paragraph 87-89** claims.

Mr. Spight references his administrative complaint, Case No. TD 04-2530, that the IRS discriminated against him based on race, sex and reprisal for EEO activity when he was denied a temporary GS-03 mail clerk position in April 2004.

The **Paragraph 87-89** claims are not like or reasonably related to the allegations in Mr. Spight's administrative complaint, Case No. TD 04-2530, and do not fall within an administrative investigation which could have been reasonably expected to grow out the Mr. Spight's administrative complaint, Case No. TD 04-2530. Mr. Spight fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 87-89** claims. As such, this Court DISMISSES Mr. Spight's **Paragraph 87-89** claims in the absence of administrative exhaustion to invoke this Court's jurisdiction.

### Mr. Hawkins' Claims Not Administratively Raised

The IRS hired Mr. Hawkins as a GS-12 clerk in September 1972. The IRS contends that Mr. Hawkins' following claims are barred because he failed to present them administratively prior to filing this action:

**Paragraph 92** alleges that Mr. Hawkins in 1990 was denied an EEO manager position based on his race.

**Paragraphs 93-95** allege that in 1990 and 1991, Mr. Hawkins twice applied for promotion to Section Chief Adjustments and was denied in favor of lesser qualified whites.

**Paragraph 96** alleges that in the late 1990s, a manager told Mr. Hawkins that Mr. Hawkins could expect no promotions because there were too many white females "in the pipeline" ahead of him.

**Paragraph 97** alleges that the IRS refused to grade Mr. Hawkins at GS-13 as it had other night shift managers who were responsible for fewer employees than Mr. Hawkins.

**Paragraph 98** alleges that a manager circulated a biased petition to other managers to gain support to eliminate Mr. Hawkins' position.

**Paragraph 99** alleges that the IRS' actions caused Mr. Hawkins' constructive discharge and resignation in 2004.

The IRS lacks record that Mr. Hawkins filed an administrative discrimination complaint as to **Paragraphs 92-99** claims.

Mr. Hawkins fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 92-99** claims. As such, this Court DISMISSES Mr. Hawkins **Paragraph 92-99** claims in absence of administrative exhaustion to invoke this Court's jurisdiction.

### Mr. Jackson's Untimely Raised Claims

The IRS hired Mr. Jackson as a clerk in February 1972. The IRS contends Mr. Jackson's following claims are barred because he untimely raised them:

**Paragraph 65** alleges that when he expressed interest in the safety officer position left vacant by a 1998 retirement, a manager told Mr. Jackson that the safety officer position would be eliminated before given to Mr. Jackson.

Mr. Jackson addressed the **Paragraph 65** claim in part in his administrative discrimination complaint, Case TD No. 04-2316, filed April 9, 2004. The IRS contends that Mr. Jackson untimely raised the **Paragraph 65** matter six years after the retirement creating the safety officer position vacancy.

**Paragraph 67** alleges that in 1999, Mr. Jackson and Roseanne Rodriguez ("Ms. Rodriguez") applied for a GS-11 Hazmat position, that the position opening was pulled and that the IRS trained Ms. Rodriguez for the position and selected her for it after re-opening it.

Mr. Jackson appeared to address the **Paragraph 67** claim in his administrative discrimination complaint, Case TD No. 04-2316, filed April 9, 2004, five years after his denial of the position in favor of Ms. Rodriguez.

**Paragraph 69** alleges that in 2002, Mr. Jackson's duties were reduced and given to non-blacks in higher graded positions to retaliate against Mr. Jackson's race discrimination complaints.

Mr. Jackson had filed an administrative discrimination complaint, Case TD No. 03-4154T, to allege age, race and sex discrimination and retaliation for participation in EEO complaints in that IRS

1  management developed and promoted employees to prevent his advancement and that management
2  minimized his duties. Unlike **Paragraph 69**, Mr. Jackson's administrative complaint did not allege that
3  his prior duties were transferred to co-workers in higher grade positions to retaliate for engaging in
4  protected activities. Mr. Jackson made no allegations of such conduct occurring 45 days prior to
5  December 5, 2002, when he sought EEO counseling in connection to Case TD No. 03-4154T. Mr.
6  Jackson delayed until the March 4, 2004 filing of Case TD No. 04-2316 to allege that his job duties had
7  been reduced and given to a coworker.

8  Mr. Jackson fails to challenge meaningfully IRS' contentions that he failed to pursue timely
9  **Paragraph 65, 67 and 69** claims. This Court DISMISSES Mr. Jackson's **Paragraph 65, 67 and 69**
10 claims in the absence of timely administrative exhaustion to invoke this Court's jurisdiction.

11 **Mr. Robinson's Claims Subject To Adverse Administrative Decision**

12 The IRS contends that Mr. Robinson's following claims are barred because he failed to appeal
13 from an adverse MSPB or Treasury Department decision:

14 **Paragraph 24** alleges that in June 2000, Mr. Robinson was suspended for 30 days and removed
15 from his management position due to an alleged offense for which similarly situated non-blacks received
16 significantly more lenient discipline.

17 Mr. Robinson filed an administrative discrimination complaint regarding his 30-day suspension
18 and reassignment. The Treasury Department separated the suspension and reassignment claims into two
19 complaints as the suspension was an adverse action appealable to the MSPB. The Treasury Department
20 issued its September 11, 2002 decision on the complaints, and Mr. Robinson appealed to the MSPB.
21 The MSPB issued a February 8, 2005 final decision adverse to Mr. Robinson. The IRS has no record
22 of Mr. Robinson's appeal of the February 8, 2005 final MSPB determination within 30 days of its
23 issuance.

24 **Paragraph 25** alleges that Mr. Robinson was removed from his position as National Office
25 Liaison and that he was later told that he had improperly submitted travel vouchers although non-blacks
26 who submitted improper travel vouchers did not suffer loss of positions or similar discipline.

27 In his administrative discrimination complaint, Case TD No. 01-4171, Mr. Robinson alleged that
28 he had been removed from a district office coordinator to leave the IRS unclear whether that claim is

1   the same as removal from the national office liaison position.  The IRS has no record that Mr. Robinson
2   timely appealed the Treasury Department's September 2004 final decision in Case TD No. 01-4171 and
3   in turn **Paragraph 25's** removal from the national office liaison claim to the extent it was raised in Case
4   TD No. 01-4171.  Alternatively, the IRS contends that if the **Paragraph 25** claims are different from
5   those in Case TD No. 01-4171, they are barred as outside the scope of Mr. Robinson's administrative
6   discrimination complaint in Case No. TD No. 01-4171.

7   Mr. Robinson raised the harsher travel voucher treatment claim in the same MSPB process where
8   he addressed his suspension and reassignment.  The IRS has no record of Mr. Robinson's appeal of the
9   final MSPB determination within 30 days of its issuance.

10  Mr. Robinson references his administrative complaint, Case No. TD 03-4024T, which appears
11  to address an unrelated plant liaison technician position.  As such, the **Paragraph 25** claim is not like
12  or reasonably related to the allegations in Mr. Robinson's administrative complaint, Case No. TD 03-
13  4024T, and does not fall within an administrative investigation which could have been reasonably
14  expected to grow out the Mr. Watson's administrative complaint, Case No. TD 03-4024T.

15  **Paragraph 26** alleges that a non-black subordinate called Mr. Robinson a "liar" and an "idiot"
16  in front of other employees but was later promoted, not reprimanded.  The IRS lacks record that Mr.
17  Robinson contacted an EEO counselor or filed an administrative discrimination complaint as to
18  **Paragraph 26** claims.  In Case TD No. 01-4171, Mr. Robinson claimed that management called him
19  an "idiot" in a meeting.  The IRS has no record that Mr. Robinson timely appealed the Treasury
20  Department's final decision in Case No. 01-4171 and in turn **Paragraph 26** claims to the extent raised
21  in Case TD No. 01-4171.

22  **Paragraph 29** alleges that Mr. Robinson was removed from his management position after he
23  complained of racial discrimination to the IRS' EEO office.  As noted above, Mr. Robinson filed an
24  administrative discrimination complaint regarding his 30-day suspension and reassignment.  The
25  Treasury Department issued its September 11, 2002 decision on the complaints, and Mr. Robinson
26  appealed to the MSPB.  The IRS has no record of Mr. Robinson's appeal of the February 8, 2005 final
27  MSPB determination within 30 days of its issuance.

28  Mr. Robinson fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 24-**

**26 and 29** claims. As such, this Court DISMISSES Mr. Robinson's **Paragraph 24-26 and 29** claims in the absence of timely administrative exhaustion to invoke this Court's jurisdiction.

### Mr. Robinson and Mr. Alston's Claims Subject To Union-Assisted Arbitration

The IRS claims Mr. Robinson's **Paragraph 30** claim is barred because Mr. Robinson elected to resolve it through a NTEU-negotiated arbitration. **Paragraph 30** alleges that Mr. Robinson was unlawfully terminated because of race in 2005.

Mr. Robinson elected to pursue the termination matter through arbitration with NTEU assistance and not through the statutory MSPB or EEOC process. The arbitrator issued a September 4, 2007 decision to uphold the IRS' decision to terminate Mr. Robinson.

The IRS also argues that Mr. Alston's **Paragraph 73** (grade promotion claim) is barred in that Mr. Alton elected to address the claim through NTEU-assisted arbitration.

Mr. Robinson fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 30** claim. Mr. Alston fails to challenge meaningfully the IRS' contentions to dismiss his **Paragraph 73** claim. As such, this Court DISMISSES Mr. Robinson's **Paragraph 30** claim and Mr. Alston's **Paragraph 73** claim as barred by arbitration election.

### CONCLUSION AND ORDER

Based on the above rulings, Mr. Alston, Mr. Hawkins, Mr. McIntosh, Mr. Robinson, Mr. Spight and Ms. Williams lack underlying claims to invoke this Court's jurisdiction and in turn to pursue their Title VII discrimination, retaliation and hostile work environment causes of action. An attempt to amend the SAC cannot cure the jurisdictional deficiencies. As such, this Court DISMISSES all claims of Mr. Alston, Mr. Hawkins, Mr. McIntosh, Mr. Robinson, Mr. Spight and Ms. Williams. This Court directs the clerk to enter judgment in favor of defendant Henry M. Paulson, Jr., Secretary, United States Department of Treasury, and against plaintiffs Norman Alston, Tony Hawkins, Percy McIntosh, Kenneth Robinson, Rick Spight and Nicole Williams.

IT IS SO ORDERED.

**Dated:   November 21, 2007**              /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE