# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| KENNETH ROBINSON, et al., | CASE NO. 1:05-cv-01258-LJO-SKO |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO SEVER** |
| v. | |
| TIMOTHY GEITHNER, SECRETARY OF THE TREASURY, | (Docket No.) |
| Defendant. | |

## I.   INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, brought by current and former employees of the Internal Revenue Service. When the complaint was filed, the plaintiffs included Kenneth Robinson, Darryl DuChene,[1] Tony Hawkins, Rudy Jackson, Percy McIntosh, Rick Spight, Tyrone Watson, Nicole Williams, and Norman Alston (collectively "Plaintiffs"). Plaintiffs' claims generally consisted of "disparate treatment in promotion, performance evaluation and discipline" and retaliation on the basis of race. The named defendants included the Secretary of the Treasury and the Internal Revenue Service.[2]

---

[1] Mr. DuChene's claims were dismissed from the lawsuit on September 5, 2006.

[2] The claims against the Internal Revenue Service were dismissed on March 23, 2010.

On November 26, 2007, the district court dismissed Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs appealed the district court's order, and on November 13, 2009, the Ninth Circuit affirmed in part. The Ninth Circuit held that the claims of Hawkins, Spight, and Williams were properly dismissed because they failed to establish that their claims were within the scope of any administrative complaints. (Doc. 113.) The court also determined that Plaintiff Alston was not entitled to amend his complaint because he had not filed an administrative complaint covering the claims in his second amended complaint. (Doc. 113.) The Ninth Circuit also held that certain claims of Plaintiffs Kenneth Robinson, Rudy Jackson, and Percy McIntosh were not subject to dismissal for lack of jurisdiction and remanded the matter to the district court. (Doc. 113.)

Following remand, the Court issued a new scheduling order on January 14, 2010. On October 29, 2010, the Secretary of the Treasury, Timothy Geithner, filed a Motion to Sever and Dismiss as misjoined Plaintiffs Jackson's and McIntosh's claims pursuant to Federal Rule of Civil Procedure 20 or, in the alternative, a Motion to Bifurcate each Plaintiff's claims for purposes of trial pursuant to Federal Rule of Civil Procedure 42(a). A hearing was held on December 1, 2010, and the matter was argued and submitted. (Doc. 134.) It is this motion that is pending before the Court.

## II.   FACTUAL BACKGROUND

The following factual background is based upon the complaint and discovery responses provided by Plaintiffs during the course of the litigation.

**A.   Plaintiff Kenneth Robinson**

Kenneth Robinson is the lead Plaintiff. He is an African-American who was hired by the Fresno, California, branch of the IRS in 1985. (Doc. 42, Second Amended Complaint ("SAC") ¶ 21.) In 2000, Robinson was denied a promotion to an EEO specialist position due to selection criteria set by a selection committee, which were chosen for the purpose of excluding African-American applicants. (Doc. 42, ¶ 22.)

In June 2000, Robinson received a thirty-day suspension and was removed from his management position for an alleged offense for which other non African-American employees received significantly more lenient discipline. (Doc. 42, ¶ 24.)

In February 2001, Robinson's job evaluation was reduced by the acting branch chief from "distinguished" to "satisfactory" without any justification. (Doc. 42, ¶ 23.) In that same year, a non African-American employee, Tommy Vilado, called him a liar and an idiot in front of other employees, but that employee was not reprimanded. (Doc. 132-1, Plaintiff Kenneth Robinson's Responses to Defendant's Interrogatories (Set 2), Response No. 2.)

In August 2002, Robinson was notified of his selection for an In Plant Liaison position. Later that month, Robinson was notified of a training for that position that was to occur from October 21, 2002, through October 25, 2002. (*Id*.) His team leader, Connie Gonzalez, told Robinson he was not being released to the In Plant Liaison position. (*Id*.) On September 5, 2002, Robinson requested to be informed why he was not being released, and the response from his team leader was that he was scheduled to receive phone and paper training for another position. (*Id*.) Despite this, Robinson never received the scheduled training. (*Id*.) Robinson was subsequently informed that he was denied the In Plant Liaison position because he had previously submitted improper travel vouchers. (*Id*.) He asserts that other employees, including his supervisor, Sharon Brockbank, had trouble with these vouchers but were not disciplined. (*Id*.)

In October 2002, Robinson was scheduled to move to another work unit, but Ms. Gonzalez, his supervisor, repeatedly delayed evaluating him and refused to give him a departure rating. (*Id*.) She eventually rated him as "minimally successful." (*Id*.) However, evaluations of his work before and after this evaluation showed that he was rated as "fully successful." (*Id*.)

In March 2003, Robinson's manager, Janet Sharpe, removed him from overtime because of alleged errors. (Doc. 132-1, Response No. 4.) Ultimately, Robinson was removed from his management position after he complained of racial discrimination to the Equal Employment Opportunity ("EEO") office of the IRS. (Doc. 42, ¶ 29.) One of his managers, Janet Sharpe, was aware of his EEO activity and criticized him for it. Robinson's employment was eventually terminated entirely around 2005. (Doc. 42, ¶ 30.)

During discovery, Robinson was asked to identify each and every person with knowledge of facts relating to the allegations of his complaint. (Doc. 132-1, Interrogatory No. 1.) Robinson identified the following individuals: (1) Coleen Gonzalez, Team Leader; (2) Emma Smith,

Department Manager; (3) Dawn Baxter, Human Resources Specialist; (4) Gloria Delgado, Team Leader); Janet Sharpe, Manager; (5) Ellen Mooradian; (6) Glen Coles; (7) Rhonda Hon; (8) Karl Meredith; (9) David Martin, IRS employee and Plaintiff's second-level manager; (10) Yvonne McClain, IRS employee, Team Leader; (11) Tommy Vilado; (12) Sharon Brockbank; and (13) Richard Freeman. (Doc. 132-1, Response No. 1.)

**B.     Rudy Jackson**

Plaintiff Rudy Jackson was hired by the Fresno, California, branch of the IRS on February 2, 1972, as a "clerk." (Doc. 42, ¶ 52.) He was assigned to the Machine Services Unit. (Doc. 42, ¶ 53.) While in that position, Jackson was subjected to racial slurs, and he was forced to perform menial tasks unrelated to his job responsibilities as a form of harassment. (Doc. 42, ¶ 55.)

In the late 1980s, Jackson was assigned to the EEO Office as an assistant. (Doc. 42, ¶ 59.) In or around 1991, Jackson was transferred to the position of Safety Officer, classified as a GS-8 position. (Doc. 42, ¶ 61.) In that position, Jackson was not given promotions because of his race, while two lesser qualified non-African-Americans were given promotions.

In 1999, Jackson and another employee (Rosanna Rodriguez) applied for a GS-11 "Hazmat" position. (Doc. 42, ¶ 67.) The position was cancelled, and Rodriguez received additional training; when the position was reopened, Rodriguez was given the job. (*Id*.) Once Rodriguez vacated her position to take the promotion, Barbara Mecca was moved into Rodriguez's old position. Mecca had no safety experience, and Jackson's manager instructed him to provide Mecca with training. (Doc. 132-3, Response No. 2.) Mecca was promoted after two years in that position, while Jackson did not receive any promotions. (*Id*.)

Mecca was given credit for his work, and Jackson claims that the IRS intentionally closed positions for which Mecca was not qualified so that she might receive additional training and then reapply for the positions. (Doc. 132-3, Response No. 2.)

In 2002, Jackson engaged in a dispute with a supervisor, Randall Severs. (Doc. 132-3, Response No. 3.) When Jackson reported the dispute to his manager, management lowered his performance evaluations. (*Id*.) Another employee made comments about his leave hours; subsequently, his leave hours were closely monitored, and he was denied leave for a medical

appointment. (*Id*.) Jackson's employment was ultimately involuntarily terminated in 2006. (Doc. 42, ¶ 71.)

In discovery responses served by Jackson, he identified persons with knowledge of the facts related to his allegations, which included the following: (1) Rosanna Rodriguez, IRS employee; (2) Barbara Mecca; (3) Linda Holbrook; (4) Norris Walker, Area Manager; (5) Jack Royster; (6) Tyehimba Muuwakkil, CAD Analyst; (7) Melinda Thompson, Safety and Security Unit Supervisor; (8) Bonnie Lewis, Assistant Director of the Processing Division; (9) Margaret Frech, Section Chief; (10) Jeff Cole; (11) Sandy Bailey, temporary Safety and Security Unit Supervisor; (12) Randall Severs, Building Del Supervisor; (13) Dave Lindauer; (14) Larry M. Schleffer, Program Manager; (15) Tina Kulinovich, Industrial Hygienist at Occupational Safety and Health Administration; (16) Vickie McAlester; (17) Norma Perez; (18) Percy McIntosh; (19) Tyrone Watson; and (20) Tony Hawkins. (Doc. 132-3, Response No. 1.)

**C.     Percy McIntosh**

Plaintiff Percy McIntosh was hired by the IRS in or about 1988 (Doc. 42, ¶ 31.) McIntosh applied for and was selected for a position as an EEO Specialist, effective August 13, 2000. (Doc. 132-2, Plaintiff Percy McIntosh's Responses to Defendant's Interrogatories (Set 2) Response No. 2.) Prior to this, McIntosh had held a GS-11 Customer Service Supervisory Position for 20 months and had worked as an EEO collateral duty counselor from 1993 through 1994, handling cases of employees up to the GS-13 level. (*Id*.) At first, McIntosh was told that he was not qualified for the EEO Specialist Position. (*Id*.) He was later told that, while he was qualified for the position, he was only qualified at the GS-9 grade level because he lacked specialized experience. (*Id*.) However, other non-African-American employees were selected at the GS-12 level with no prior EEO experience. (*Id*.) Ultimately, McIntosh was offered the EEO Specialist position but only at the GS-9 level. (*Id*.) McIntosh complained about his GS status and was ultimately assigned a GS-11 status. (*Id*.)

McIntosh claims that he was retaliated against for his EEO complaints by selecting official Joe Leal and EAR Specialist Heather Sosnowsky. On or around November 24, 2004, McIntosh's supervisor attempted to suspend him for alleged misconduct, but the allegations were "shown to be

groundless[,] and the suspension was withdrawn." (Doc. 42, ¶ 42.)

In response to interrogatories, McIntosh identified the individuals who have information to support his claims, including the following: (1) Jim Grimes, Director of Compliance in Fresno; (2) Ellen B. Mooradian, Submission Processing Field Director in Fresno branch; (3) Ronda Hon, compliance Service Field director, Fresno; (4) Glen Coles, Accounts Management Field Director, Fresno; (5) Diane Delgado, Personnel Chief, Treasury Department; (6) Gerald Steinhauer, Supervisory Program analyst, Fresno; (7) Patricia Evans, Director of Field Services, Farmers Branch, Texas; (8) Lorezno VanPelt, EEODFS Associate Director, Treasury Department; (9) Joe Leal, Equal Employment Specialist, Fresno; (10) Linda Martin, Treasury Department; (11) Loletta Roberts, Supervisory Human Resources Specialist, Fresno; (12) Emma Smith, Treasury Department; (13) Jodi Davis, Department Manager, Fresno; (14) Debbie Nelson, Department Manager, Fresno; (15) Kelli Key, Equal Employment Manager; and (16) Richard Slizeski, attorney. (Doc. 132-2, Plaintiff Percy McIntosh's Responses to Defendant's Interrogatories (Set 2) Response No. 1.)

### III.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 20 provides that persons may join in one action as plaintiffs if:

> (A)   they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B)   any question of law or fact common to all plaintiffs will arise in the action.

The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

For there to be transactional relatedness under Rule 20(a)(1)(A), the claims must arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P.

20(a)(1)(A). There is no bright-line definition of "transaction," "occurrence," or "series." Instead, courts assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive party joinder. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Although there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate.

The second part of the joinder test requires commonality. Commonality under Rule 20(a)(1)(B) is not a particularly stringent test. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001) ("the common question test[] is usually easy to satisfy"). The Rule requires only a single common question, not multiple common questions. Fed. R. Civ. P. 20 ("any question of law or fact common to . . . "). The common question may be one of fact or of law and need not be the most important or predominant issue in the litigation. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (Fed. R. Civ. P. 20(a) does not establish a quantitative or qualitative test for commonality).

Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own motion, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

Thus, if the test for permissible joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by severance. *Coughlin,* 130 F.3d at 1350. In such a case the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs "against some or all of the present defendants based on the claims or claims attempted to be set forth in the present complaint." *Id*.

**B.    Analysis**

Defendant argues that Plaintiffs' claims are misjoined under Rule 20. Defendant also argues that, even if Plaintiffs' claims are not misjoined, separate trials should be ordered pursuant to Rule 42(b) because Defendant will be prejudiced by having all the claims tried together.

Plaintiffs present no argument that their claims are properly joined. Rather, Plaintiffs conceded during the hearing on December 1, 2010, that their claims are not properly joined under

Rule 20. Plaintiffs maintain, however, that the Court should not dismiss the claims of Plaintiffs McIntosh and Percy, but should separate each of Plaintiffs' claims into different cases to be tried separately.

### 1. Defendant's Motion Is Timely

Plaintiffs argue that the Court should not entertain Defendant's motion because it is untimely. Plaintiffs complain that the litigation is nearing trial and that, given the stage of the case, the entire motion should be denied as untimely. This argument fails for two reasons. First, despite the length of time this case has been pending, the parties were provided a new schedule in January 2010 after the case was remanded by the Ninth Circuit, which allowed Defendant until April 30, 2011, to file pretrial motions.

Second, the factual basis for the claims has only been recently fleshed out in more detail through depositions and discovery. For example, the depositions of Plaintiffs took place as recently as October 19, 2010. Additionally, discovery responses that were helpful for framing the factual dispute between the parties were served by Plaintiffs in May 2010. Although this case has been pending since 2005, there is no evidence that Defendant has not been diligent in bringing its motion to sever. For these reasons, Defendant's motion is not untimely.

### 2. Plaintiffs' Claims Are Misjoined

#### a. Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence

Permissive joinder requires that any joined claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). The Ninth Circuit defines the term "transaction or occurrence" to mean "similarity in the factual background of a claim." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000). Claims that "'arise out of a systematic pattern of events' arise from the same transaction or occurrence." *Id.*

In *Coughlin*, for example, forty-nine plaintiffs alleged that the Immigration and Naturalization Service unreasonably delayed plaintiffs' separate applications and petitions in violation of the Administrative Procedure Act and the U.S. Constitution. 130 F.3d at 1349. In affirming the district court's conclusion that the claims did not satisfy the "same transaction" requirement, the Ninth Circuit

8

noted:

> The first prong, the "same transaction" requirement, refers to similarity in the factual background of a claim. In this case, the basic connection among all the claims is the alleged procedural problem of delay. However, the mere allegation of general delay is not enough to create a common transaction or occurrence. Each Plaintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed in some instances and varies from case to case. And, most importantly, there may be numerous reasons for the alleged delay. Therefore, the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence.

*Id*. at 1350.

In contrast, in *Mosley*, claims brought by ten plaintiffs alleging they had been injured by a company-wide policy designed to discriminate against African-Americans were found by the Eighth Circuit to have "arise[n] out of the same series of transactions or occurrences," a racially discriminatory workplace. 497 F.2d at 1333-34.

Defendant points to a number of decisions in which the district court determined severance is appropriate in employment cases under Title VII. For example, courts have severed plaintiffs' claims where the plaintiffs were alleging discrimination on the part of a single defendant, but plaintiffs could not point to one common decision-maker making the discriminatory employment decisions. Generally, courts have concluded that the failure to point to a common decision-maker amounts to a failure to meet the transactional relatedness test.

Defendant relies on *Gammons v. Real Property Inv. Servs., Inc.*, No. CV-10-8081-PICT-LOA, 2010 WL 3156076 (D. Ariz. Aug. 9, 2010), asserting that courts routinely refuse to join multiple plaintiffs who are alleging discriminatory practices of their employer. In *Gammons,* two joined plaintiffs were employed to maintain and clean residential apartments owned by the defendant. The first plaintiff asserted sexual harassment against the defendant, and the second plaintiff asserted racial harassment. The two plaintiffs had at least one supervisor in common who committed the assertedly discriminatory acts. However, the court found that the transactional relatedness test was not met because general claims of discrimination are not enough to create a common transaction or occurrence. The court pointed to the multiple factual differences between the two claims including that they had (1) different job positions, (2) different direct supervisors, (3) named different principal offenders, (4) asserted different reasons for leaving their employment, (5) different performance

9

issues, and (6) suffered different adverse employment actions when they complained about the conduct.

Defendant also cites *Klimaski v. Parexel Int'l*, No. Civ. A. 05-298, 2005 WL 857350, at *3 (E.D. Pa. Apr. 4, 2005). In *Klimaski*, the district court distinguished *Mosley* on grounds that the plaintiffs in that case were employees who were all discharged pursuant to a company-wide policy of discrimination. In contrast, the plaintiffs in *Klimaski* stated claims that rested on distinct factual circumstances, including that they were discharged by different decision-makers, under different circumstances, or for allegedly different reasons. Thus, the court in *Klimaski* concluded that plaintiffs' employment claims were misjoined under Rule 20.

Defendant notes that Plaintiffs' claims involve different time periods (Robinson – 2002; McIntosh – 2000, and Jackson – 2002-05); different alleged discriminatory conduct (Robinson – denied detail position, McIntosh – selected for position but at a lower GS grade level, Jackson – job responsibilities given to others); different alleged supervisors or wrongdoers (Robinson – Gonzalez/Lewis, McIntosh – non-Fresno personnel officer, Jackson – Thompson/Frech); and different job positions or employed in different divisions (Robinson – unknown, McIntosh – non-Fresno personnel office, Jackson – safety unit). (*See* Defendant's Br. at 10:1-8). Plaintiffs take no issue with this characterization of their claims.

There are significant factual differences among each of Plaintiffs' claims under Title VII. Like *Gammons* and *Klimaski*, Plaintiffs' claims involve different supervisors, Plaintiffs worked in different job positions in different departments, and Plaintiffs allege different discriminatory conduct that occurred at different time periods. The only unifying factor is that Plaintiffs all allege discriminatory practices on the basis of race under Title VII against the same employer. However, unlike *Mosley*, Plaintiffs do not point to one agency-wide policy under which they all suffered discrimination or one policy-maker that was responsible for their discrimination. The incidents of alleged discrimination do not stem from the application or the implementation of a particular policy – the complained of conduct is distinct with regard to each claim. Plaintiffs' claims do not pass the transactional relatedness test.

### b. Plaintiffs' Claims Do Not Involve the Same Questions of Law or Fact

Defendant argues that, pursuant to *Coughlin, Bailey,* and *Grayson*, Plaintiffs' claims do not share a common question of fact or law despite the fact that the claims all arise out of employment at the same IRS service center in Fresno and that all allege racial discrimination.

"[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351. Where claims require significant "individualized attention," they do not involve "common questions of law or fact." *Id.* In *Bailey*, the plaintiffs were African-American females who worked for defendant Northern Trust Company and were employed in the Special Assets Division within the company. *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 518 (N.D. Ill. 2000). The court determined that the claims did not satisfy the commonality requirement of Rule 20 because each decision affecting each plaintiff was a discrete act by the defendant. *Id.* The court found there was no evidence that the claims were related in any respect other than the fact that all plaintiffs worked for Northern Trust and that all claims were based on race discrimination. *Id.*

In *Grayson v. K-Mart Corp.,* 849 F. Supp. 785, 789-90 (N.D. Ga. 1994), eleven plaintiffs were employed as former store managers of defendant K-Mart. The plaintiffs filed suit for age discrimination under the Age Discrimination in Employment Act. *Id.* The court found that the claims of each plaintiff were not transactionally related, as each plaintiff worked in a different store, was geographically remote from the other plaintiffs, the decision to demote each plaintiff originated with his district manager and was derived within the context of each plaintiff's store business circumstances, and three different regional managers participated in the eleven demotion decisions at issue. *Id.* The court found that commonality was also lacking because the claims were based upon wholly separate acts of the defendant with respect to each plaintiff. *Id.* The court concluded that, simply because the plaintiffs' claims were based on the same general theories of law, this was insufficient to satisfy the commonality requirement.

In their opposition to Defendant's motion, Plaintiffs did not argue that there is commonality of law or facts among their claims and, in fact, conceded during the December 1, 2010, hearing that their claims were misjoined. Further, because these claims arise out of separate employment

decisions, in different divisions, with different supervisors, and Plaintiffs suffered different types of adverse employment decisions, Plaintiffs' claims are factually distinct and do not satisfy the commonality requirement. The fact that all the claims arise under Title VII is simply not enough.

### 3. Severance Would Not Prejudice a Substantial Right

Under Rule 21, "[if] the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350. Defendant asserts that severance of Plaintiffs McIntosh's and Jackson's claims will not deprive them of any substantial right because they will still be able to pursue their claims against the Defendant in separate cases.

While Plaintiffs did not raise the issue of the statute of limitations in their briefs, the issue was addressed by the parties at the December 1, 2010, hearing. Plaintiffs and Defendant acknowledged a potential statute of limitations issue with regard to McIntosh's and Jackson's claims if they were forced to refile their complaints separately; the parties also noted that equitable tolling may apply to McIntosh's and Jackson's claims. Whether any statute of limitations exists to bar Mcintosh and Jackson from refiling their claims, several district courts have concluded that any prejudice resulting from the statute of limitations is the risk assumed by the parties who caused the misjoinder. *See, e.g., Bravado Int'l Grp. Merch. Servs. v. Cha*, No. CV 09-9066 PSG (CWX), at *6 (C.D. Cal., June 30, 2010) ("The possibility that a court may elect to drop misjoined parties is a risk assumed by the plaintiff who chooses to prosecute an action in violation of Rule 20."); *Funtanilla v. Tristan*, 1:02-cv-06001-OWW-GSA, 2010 WL 1267133, at *5 (E.D. Cal. Mar. 30, 2010). *But see Marti v. Padilla*, No. 1:07-cv-00066-JMR, 2010 WL 1267120, at *1 (E.D. Cal. Mar. 30, 2010) (if statute of limitations applies, plaintiffs would effectively be dismissed with prejudice, a result that contradicts Rule 21's "just terms" requirement).[3]

///

///

---

[3] Although the Court could dismiss Plaintiff McIntosh's and Jackson's claims and drop them from the lawsuit pursuant to Rule 21 despite a potential statute of limitations bar, as set forth below it will not elect to do so here.

12

**4.   Misjoined Claims Should Be Allowed to Proceed Separately Rather than Be Dismissed Without Prejudice**

Defendant argues that the Court must dismiss all of Plaintiff McIntosh and Jackson's claims, leaving only Plaintiff Robinson. Although this is an accepted practice under Rule 21, misjoinder does not require dismissal. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (upon a finding of misjoinder, a court "has two remedial options: (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately"); *see generally Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-cv-480-OWW-GSA, 2009 WL 3857417, at *8 (E.D. Cal. Nov. 17, 2009).

While dismissal at this late date is the risk that Plaintiffs assumed by filing a suit with misjoined parties, the Court must consider the reasonableness of dismissing McIntosh's and Jackson's claims. This case is nearly six years old, discovery is nearly complete, and a significant amount of judicial resources has already been expended. Moreover, the practical effect of dismissing Plaintiff McIntosh's and Jackson's claims could result in (1) additional lawsuits that would stand in a different posture than the existing litigation, requiring both parties to expend additional resources; (2) the creation of additional legal issues – e.g., upon filing new complaints, Plaintiffs McIntosh and Jackson may be required to establish their time for filing suit should be equitably tolled; (3) subjecting the parties to duplicative and repetitive procedural requirements; and (4) no saving of any judicial resources. Therefore, the Court finds that it is more reasonable to sever Plaintiff McIntosh's and Jackson's claims and allow them to proceed as two separate lawsuits, both of which should be administratively managed with the lead Plaintiff's case, Kenneth Robinson.

### IV.   CONCLUSION

Accordingly, THE COURT HEREBY ORDERS THAT:

1.   Defendant's Motion to Sever Plaintiffs' claims is GRANTED;

2.   Defendant's Motion to Dismiss Plaintiff's claims without prejudice is DENIED;

3.   The Clerk of the Court is directed to:

   a.   Sever the Plaintiff's claims into three distinct cases by opening two new cases with consecutive numbers assigning one to Plaintiff McIntosh and the other

13

to Plaintiff Jackson;

      b.    Assign both new cases the same presiding and referral judges currently assigned to this case; and

      c.    Relate all three cases for administrative efficiency.

All scheduling dates assigned in this lead action shall be applied to the two new related cases.

IT IS SO ORDERED.

**Dated:     January 7, 2011**                              /s/ Sheila K. Oberto
                                                      UNITED STATES MAGISTRATE JUDGE