1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   PERCY McINTOSH,                          CASE NO. CV F 11-0054 LJO SKO

11                    Plaintiff,              **SUMMARY JUDGMENT DECISION**
                 vs.                          (Doc. 139.)
12
     TIMOTHY GEITHNER, Secretary
13   of the Treasury,

14                    Defendants.
     _____/
15

16                              __INTRODUCTION__

17        Defendant Treasury Secretary Timothy Geithner ("Secretary") seeks summary judgment in the

18   absence of evidence to support plaintiff Percy McIntosh's ("Mr. McIntosh's") discrimination and

19   retaliation claims arising from his delayed grade level increase for an Internal Revenue Service ("IRS")

20   position.  Mr. McIntosh responds that discrepancies as to qualifications for a higher grade level and

21   promotions of similarly situated employees raise factual issues to defeat summary judgment.  This Court

22   considered the Secretary's summary judgment motion on the record[1] without a hearing, pursuant to Local

23   Rule 230(g).  For the reasons discussed above, this Court GRANTS the Secretary summary judgment.

24   _____

25        [1]        This Court carefully reviewed and considered the record, including all evidence, arguments, points and
     authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
26   by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the
     effect that this Court did not consider the evidence, argument, document, objection or paper.  This Court thoroughly reviewed,
27   considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.  This Court does
     not rule on objections in a summary judgment context, unless otherwise noted.
28

                                        1

**BACKGROUND**

**Summary**

Mr. McIntosh is a black IRS territorial manager.  In this action, Mr. McIntosh pursues discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., because in 2000, he was qualified at a GS 9 entry level for a position in the Equal Employment Opportunity ("EEO") office in the Fresno IRS Service Center ("Fresno center").  Mr. McIntosh claims that he was denied a GS 12 level for the EEO position due to racial discrimination and for retaliation for making EEO complaints.

**Mr. McIntosh's EEO Specialist Position**

On August 13, 2000, Mr. McIntosh applied for an EEO specialist position in the Fresno center's EEO office.  Mr. McIntosh's application identified neither his race nor prior EEO activity.  At the time of the application, Mr. McIntosh worked the previous 20 months as an IRS customer service manager at a GS11 level.  The EEO specialist is a "ladder" position by which an applicant entering at GS 9 level is automatically promoted to GS 11 level after one year of satisfactory service and to a GS 12 level after another year of satisfactory service.  If an applicant has sufficient "specialized experience" for a ladder position, the applicant my qualify for a higher entry GS level.  In such case, a personnel staffing specialist considers prior relative knowledge, experience and training.

At the time of his EEO specialist application, Mr. McIntosh had worked eight years as an EEO counselor as "collateral duty."  Mr. McIntosh explains that although he "had another primary job with the IRS, as a secondary responsibility he counseled IRS employees with complaints of workplace discrimination at the early stages of the EEO Administrative complaint process."  Mr. McIntosh had also worked with the Diversity Advisory Committee and with EEO Special Emphasis Programs to advise the Fresno center director regarding discriminatory processes and to identify barriers preventing "protected groups" from "getting hired or advancing in the federal service."

In September 2000, Mr. McIntosh was selected for the EEO specialist position at a GS level 9 with a $43,793 salary, effective August 13, 2000.  The decision to qualify Mr. McIntosh at a GS level 9 was made by Lisa Harris ("Ms. Harris"), a personnel staffing specialist in the IRS' Washington, D.C. national office ("national office").  Mr. McIntosh has never met Ms. Harris.  In his deposition, Mr.

McIntosh testified that he recalls no conversations with Ms. Harris regarding his race or prior EEO activity. Although unsure, Mr. McIntosh does not "think" he had communications with anyone in the national office about his entry GS level for as an EEO specialist. Mr. McIntosh lacks personal knowledge of contacts between the Fresno center and the national office prior to determination of his entry GS 9 level. Furthermore, Mr. McIntosh lacks knowledge that Fresno center director Ronda Hon ("Ms. Hon") was involved in his entry GS 9 level for the EEO specialist position. In fact, Mr. McIntosh lacks knowledge of the Fresno center's communications or involvement in the entry GS 9 level.

The Secretary attributes Ms. Harris' entry GS 9 level determination and denial of a GS 12 level to Mr. McIntosh's lack of EEO experience in a GS 11 level position, the importance of "specialized experience," and Mr. McIntosh's original application materials. In his declaration, Mr. McIntosh states:

> When I inquired as to why I was only given a GS-09, I was told by an individual at the Atlanta Personnel Office, whose name I do not recall, that I was only qualified for the [GS 9] grade level because I lacked "specialized experience" as an EEO specialist.

Mr. McIntosh claims that he qualified for an entry GS 12 level because he had been a GS 11 level for 20 months in his customer service manager position and had, as he testified, "'mucho' EEO experience as collateral duty EEO" and had been "involved in EEO-related activities." Mr. McIntosh accepted the entry GS 9 level "under protest" and testified: "I knew I was going to, first of all, go up the chain to see about getting a 12. If that wouldn't work, then I would file an EEO complaint."

Mr. McIntosh spoke with his supervisor and EEO Officer Joe Leal ("Mr. Leal"), and according to his declaration, Mr. McIntosh told Mr. Leal that "I considered the fact I was only given the job at the GS-9 level to be racially discriminatory" and "I informed Leal that I was going to file an EEO complaint." Mr. McIntosh agreed to allow Mr. Leal to address the entry GS level, and Mr. Leal corresponded with Ms. Harris and her supervisor Gwen Banks ("Ms. Banks") at the national office to increase Mr. McIntosh's GS level. With Mr. Leal's assistance to provide information to better explain his EEO activities, Mr. McIntosh was elevated to a GS 11 level with a $47,412 salary, effective December 31, 2000. His salary increased to $49,102, effective January 14, 2001. The Secretary attributes Ms. Banks to have reviewed and concurred with Ms. Harris' decision to qualify Mr. McIntosh at the GS 11 level, not a GS 12 level. The Secretary further attributes Ms. Banks to have obtained review by a senior staffing specialist and another manager who concurred with the decision to qualify

1    Mr. McIntosh at a GS 11 level.

2          According to Ms. Harris that "the qualification process had nothing to do with Mr. McIntosh's

3    race" and that "the majority of personnel staffing specialist[s] in the [national] office are African-

4    American." The Secretary notes that Mr. Leal's communications leading to Mr. McIntosh's GS 11 level

5    increase addressed neither Mr. McIntosh's race nor prior EEO activity.

6          Mr. McIntosh was increased to a GS 12 level with a $53,657 salary, effective July 15, 2001. Mr.

7    McIntosh claims that he "performed GS-12 level work" from the first day as an EEO specialist.

8                              **Mr. McIntosh's Administrative Claim**

9          On January 2, 2001, Mr. McIntosh engaged in informal counseling to address his GS 11 level

10   increase rather than a retroactive GS 12 level increase. The counseling report, signed by Mr. McIntosh,

11   identifies the December 21, 2000 alleged discriminatory decision not to provide a retroactive GS 12

12   level increase.

13         On February 20, 2001, Mr. McIntosh submitted his formal administrative complaint to allege that

14   he was denied a retroactive GS 12 level increase based on race discrimination and retaliation for his past

15   EEO activity. The administrative complaint identifies the December 21, 2000 denial of the retroactive

16   GS 12 level increase as the date when he first learned of alleged discrimination.

17                             **Mr. McIntosh's Claims And Damages**

18         Mr. McIntosh proceeds on his Second Amended Complaint for Damages ("SAC"). This Court

19   dismissed several of his SAC discrimination and retaliation claims. After appeal to the Ninth Circuit

20   Court of Appeals and its affirming and reversing in part dismissal of claims, Mr. McIntosh is limited to

21   the SAC's following Title VII discrimination and retaliation claims:

22               In or about August 2000, McIntosh applied for and was denied a GS-260-
23         09/11/12 EEO Specialist Position. The position was instead given to a lesser qualified
           non-African-American employee.

24               In or about December 2000, McIntosh was promoted from GS-9 grade to a GS-11
25         grade position after being informed that the previous determination of his grade level had
           been inaccurate.

26   The Secretary attributes Mr. McIntosh to claim that he was retaliated against for:

27   1.        Filing on January 16, 1998 an EEO complaint to allege that the Fresno center's personnel

28             office used a "screen-out" procedure to eliminate Mr. McIntosh "from the ranking

                                                    4

1       process";

2       2.      1998 communications with the Fresno center personnel office regarding selection criteria

3               for positions; and

4       3.      February 2000 complaints to Fresno center director Ms. Hon about "selection and

5               promotion procedures."[2]

6       Mr. McIntosh seeks $39,378 in lost wages from denial of a GS 12 level effective August 13,

7       2000.  Mr. McIntosh claims $300,000 compensatory damages for emotional distress.

8                           **Alleged Similarly Situated Employees**

9       Mr. McIntosh has identified Mr. Leal, Jacqueline Sharp ("Ms. Sharp"), Linda Martin ("Ms.

10      Martin"),[3] Jenny Hunsaker ("Ms. Hunsaker"), and Karen Horg ("Ms. Horg") as similarly situated

11      employees who received more favorable treatment than Mr. McIntosh.  In particular, Mr. McIntosh

12      claims that they "qualified in GS-12 or higher EEO with similar or lesser EEO experience."

13      Ms. Sharp, who is white, served as a personnel staffing specialist in the Fresno center.  Ms.

14      Martin worked in the EEO office of the Fresno center.  Ms. Hunsaker was a sign language interpreter

15      in the EEO office of the Fresno center and served also in the Fresno center training branch.

16      Mr. McIntosh points out that Mr. Leal, who is Hispanic, qualified as an EEO manager with 2½

17      years of EEO experience compared to Mr. McIntosh's eight years.

18      Mr. McIntosh notes that Ms. Sharp was hired as an EEO specialist at the same time he was

19      selected and that she was assigned an entry GS 12 level although she no prior EEO experience.  Mr.

20      McIntosh further notes that he and Ms. Sharp performed "the same sort of work."

21      Mr. McIntosh points out that Ms. Hunsaker's EEO counseling experience was limited to

22      collateral duty counselor.

23      Mr. McIntosh notes that Ms. Horg is Asian and was selected as an EEO counselor although "she

24      only had experience as a collateral duty counselor."

25      _____

26      [2]      Mr. McIntosh's February 8, 2000 email to Ms. Hon requested "a detail or temporary promotion for a year
        as the EEO Officer" and opined that "the hiring and selection procedures of the Fresno Service Center were questionable,
        at best."

27

28      [3]      Mr. McIntosh's opposition papers do not address Ms. Martin, and this Court surmises that Mr. McIntosh
        no longer claims that she is similarly situated to him.

                                            5

1   According to IRS Lead HR Specialist Sherry L. Brown ("Ms. Brown"), with respect to an EEO

2   specialist, "prior work experience in a personnel or human resources office, as well as in an EEO office,

3   will typically reflect relevant specialized experience when determining whether the applicant would

4   qualify to enter the position at a higher GS level."

5   **DISCUSSION**

6   **Summary Judgment Standards**

7   The Secretary seeks summary judgment in the absence of evidence that Mr. McIntosh's GS level

8   determinations were based on racial discrimination or retaliation for EEO activity.  Mr. McIntosh

9   responds that factual issues regarding IRS GS level determinations and promotions of similarly situated

10  employees bar summary judgment.

11  F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

12  – or the part of each claim or defense – on which summary judgment is sought."  "A district court may

13  dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

14  judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st

15  Cir. 1999).

16  Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any

17  material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita*

18  *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv.,*

19  *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary

20  judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need

21  for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers*

22  *v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

23  On summary judgment, a court must decide whether there is a "genuine issue as to any material

24  fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey*

25  *v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

26  398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

27  S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

28  1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

1  inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

2  summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

3  S.Ct. 2505 (1986)

4          The evidence of the party opposing summary judgment is to be believed and all reasonable

5  inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

6  party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The

7  inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

8  whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-

9  252, 106 S.Ct. 2505.

10         To carry its burden of production on summary judgment, a moving party "must either produce

11  evidence negating an essential element of the nonmoving party's claim or defense or show that the

12  nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

13  persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

14  Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

15  prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

16  *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  A

17  "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

18  renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v.

19  Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

20         "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

21  court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech

22  Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

23  Only disputes over facts that might affect the outcome of the suit under the governing law will properly

24  preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

25         "If a moving party fails to carry its initial burden of production, the nonmoving party has no

26  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

27  persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

28  "If, however, a moving party carries its burden of production, the nonmoving party must produce

1    evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

2    at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

3    fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

4    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

5    of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

6    make the showing sufficient to establish the existence of an element essential to that party's case, and

7    on which that party will bear the burden of proof at trial.")

8           "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

9    the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

10   106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough

11   'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

12   *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

13   289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the

14   plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

15          As discussed below, Mr. McIntosh lacks evidence to support prima facie discrimination or

16   retaliation to warrant summary judgment for the Secretary.

17                     **Preclusion Of September 2000 GS 9 Level Claim**

18          The Secretary claims that Mr. McIntosh's discrimination and retaliation claims are limited to

19   his GS 11 level assignment effective December 31, 2000.  In other words, his claim is limited to the

20   December 2000 decision to increase Mr. McIntosh to a GS 11 level and to deny him a retroactive GS

21   12 level.  The Secretary argues that Mr. McIntosh is barred to pursue a claim based on his entry GS 9

22   level because he failed timely to pursue administrative remedies.

23          Title VII regulations require "[a]ggrieved persons" claiming discrimination based on race or

24   color to "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."

25   29 C.F.R. § 1614.105(a).  "An aggrieved person must initiate contact with a Counselor within 45 days

26   of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days

27   of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Failure to comply with this regulation

28   is "fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir.

2002); *see, e.g., Johnson v. United States Treasury Dept.*, 27 F.3d 415, 416 (9th Cir.1994) (per curiam) (affirming summary judgment based on plaintiff's failure to seek counseling before one year after the alleged incident of discrimination).

The Secretary notes that on January 2, 2001, Mr. McIntosh first contacted an EEO counselor to address his GS 11 level increase, instead of a GS 12 level increase retroactive to August 13, 2000. The Secretary notes that Mr. McIntosh focused on the December 2000 GS 11 level decision and filed a February 21, 2001 administrative complaint to identify December 21, 2000 as the date when he learned of discrimination. The Secretary contends that Mr. McIntosh's claim based on his entry GS 9 level is time barred because he delayed to seek EEO counseling until January 2, 2001, more than 45 days after the August 13, 2000 effective date of his entry GS 9 level. The Secretary argues that Mr. McIntosh is limited to a claim based on the December 2000 decision for a GS 11 level instead of a GS 12 level increase retroactive to August 13, 2000.

The Secretary is correct that Mr. McIntosh is limited to a claim based on the December 2000 decision to limit him to a GS 11 level and is time barred to pursue a claim based on his entry GS 9 level. Mr. McIntosh did not timely pursue administrative remedies to contest his entry GS 9 level. Mr. McIntosh offers nothing meaningful to challenge the Secretary's points or to support that he timely pursued administrative remedies as to the entry GS 9 level. Purported opposition is limited to his declaration's comment: "I am contending that I should have been appointed to a GS-12 in August 2000 and in December 2000." His August 2000 claim is barred in the absence of timely administrative exhaustion. As such, this Court will focus only on the IRS' December 2000 decision to assign Mr. McIntosh a GS 11 level.

**Burden Shifting Framework**

The Secretary challenges the merits of Mr. McIntosh's discrimination and retaliation claims. In particular, the Secretary argues that Mr. McIntosh is unable to establish prima facie cases of discrimination or retaliation or that IRS' legitimate, non-discriminatory GS level decisions were a pretext to discriminate and retaliate against Mr. McIntosh.

/ / /

/ / /

9

1    For Title VII discrimination and retaliation claims at issue here, the *McDonnell Douglas*[4] burden-

2    shifting framework applies in the absence of direct evidence of discrimination or retaliation.[5] *Metoyer*

3    *v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-

4    731 (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme

5    announced in *McDonnell Douglas*).  "At the first step of *McDonnell Douglas*, the plaintiff must establish

6    a prima facie case of discrimination or retaliation."  *Metoyer*, 504 F.3d at 931, n. 6.  "If the plaintiff

7    makes out her prima facie case of either discrimination or retaliation, the burden then 'shifts to the

8    defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory [or

9    retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v. County of Los Angeles*, 349

10   F.3d 634, 640 (9th Cir. 2003)).

11    "Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason

12   for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat

13   summary judgment by satisfying the ususal standard of proof required'" under F.R.Civ.P. 56(c)(1).

14   *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

15   2006) (citations and internal quotation marks omitted)).  If the employer carries its burden, plaintiff must

16   have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the

17   employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community*

18   *Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 804; 93

19   S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997).  "If a plaintiff

20   succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive,

21   summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be

22   believed."  *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993).   The plaintiff is required

23   to produce "specific, substantial evidence of pretext" to avoid summary judgment.  *Collings v. Longview*

24   *Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995).

25    Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to

26   _____

27        [4]        *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

28        [5]        Mr. McIntosh concedes that this is "a circumstantial evidence case."

show that the employer intentionally discriminated because of the plaintiff's race. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592 (2001); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592 (2001).

As an alternative to the *McDonnell Douglas* framework, a plaintiff responding to a summary judgment motion "may simply produce direct or circumstantial evidence demonstrating that a discriminatory [or retaliatory] reason more likely than not motivated [the employer]." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted). The "*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613 (1985).

"When the plaintiff offers direct evidence of discriminatory [or retaliatory] motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. . . . it need be 'very little.'" *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir 1991)). "Direct evidence is evidence which, if believed, proves the fact [of discrimination or retaliation] without inference or presumption." *Goodwin*, 150 F.3d at 1221 (citation omitted). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

With these evidentiary standards in mind, this Court turns to the worthiness of Mr. McIntosh's discrimination and retaliation claims.

## **Discrimination**

Title VII prohibits an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1). The Secretary challenges Mr. McIntosh's ability to establish a prima facie case of discrimination in absence of evidence that similarly situated employees were treated more favorably than Mr. McIntosh.

### ***Prima Facie Case***

A plaintiff "bears the initial burden of establishing a prima facie case of discrimination by

introducing evidence that gives rise to an inference of unlawful discrimination." *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

For a prima facie case, a plaintiff "must generally show" that:

1. He/she was a member of a protected class;

2. He/she was qualified for the position he sought;

3. He/she suffered an adverse employment action; and

4. There were circumstances suggesting that the employer acted with a discriminatory motive, such as, similarly situated employees not in the protected class received more favorable treatment.

*See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006); *see also Jones v. Department of Corrections and Rehabilitation*, 152 Cal.App.4th 1367, 1379, 62 Cal.Rptr.3d 200 (2007) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354-355, 100 Cal.Rptr.2d 352 (2000) (adopting the test applicable to federal discrimination claims in accordance with *McDonnell Douglas*)).

Mr. McIntosh argues that he establishes prima facie discrimination in that he is black, qualified as an EEO specialist, was denied a GS 12 level in December 2000, and treated less favorably than similarly situated employees of other races. Mr. McIntosh contends that the Secretary lacks legitimate reasons to have denied him the GS 12 level in December 2000.

### Similarly Situated

The Secretary argues that Mr. McIntosh lacks direct evidence of discrimination or evidence to support a prima facie case of discrimination. The Secretary initially attacks the absence of evidence that Mr. McIntosh was treated differently than similarly-situated individuals as to his GS levels.

"A plaintiff's disparate treatment case fails where he compares his treatment to another employee but cannot show that the other employee was similarly situated." *Ceasar v. Lamar University*, 147 F.Supp.2d 547, 552 (E.D. Tex. 2001).

"[T]o show that the 'employees' allegedly receiving more favorable treatment are similarly situated (the fourth element necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all

material respects." *Moran*, 447 F.3d at 755.  A similarly situated employee need not be "identical," but the plaintiff must show that the other employee "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir.2008); *Crawford v. Ind. Harbor Belt RR. Co.*, 461 F.3d 844, 846 (7th Cir.2006) (holding that a similarly situated employee is one who is "comparable to plaintiff in all material respects").  "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

The "similarly situated" requirement "is strict," and "courts recognize the probability that a manager may have different but legitimate concerns about the conduct of different employees." *Harris v. Winter*, 2007 WL 2900168, *15 (E.D. Cal. 2007).

The Secretary points to Mr. McIntosh's claim that Ms. Sharp, who is white, was selected as a GS 12 level specialist at the time of Mr. McIntosh's entry GS 9 level.  The Secretary attributes Mr. McIntosh to claim that Ms. Martin and Ms. Hunsaker, who are white, were hired as GS 12 level EEO counselors six months prior to his EEO specialist selection.  The Secretary argues that Ms. Sharp, Ms. Martin and Ms. Hunsaker are not similarly situated to him.

"A comparator and a plaintiff are dissimilar if they do not have in common 'similar levels of experience or education.'" *Givens v. Chambers*, 548 F.Supp.2d 1259, 1275 (M.D. Ala. 2008) (male and female employees were not similarly situated in that male had "more years of experience in the relevant field of accounting").  "Employees with different levels of experience are not 'similarly situated' for purposes of Title VII salary comparison." *Ceasar*, 147 F.Supp.2d at 552 (hiring female accountant "at the higher end of the position's pay scale because of her experience is not surprising nor is it any indication of discrimination" as to plaintiff who did not claim he was qualified to do the female accountant's job); *see Brown v. Illinois Dept. of Natural Resources*, 499 F.3d 675, 683 (7th Cir. 2007) (white and black employees were not similarly situated in that white employee had "far greater experience" and had not, like black employee, received negative performance evaluations or client

13

1   complaints or been placed on probation).

2   The Secretary notes that Ms. Sharp "had a completely different work background in the personnel

3   office" and that such experience under IRS protocol is equivalent or countable to calculate experience

4   for an EEO specialist.  The Secretary points to Mr. McIntosh's dissimilar experience as a customer

5   service manager.  The Secretary argues that Ms. Sharp and Mr. McIntosh are not similarly situated

6   because they "did not have a similar work experience that was directly countable in determining the

7   grade decision."

8   The Secretary contends that Ms. Martin and Ms. Hunsaker are dissimilar to Mr. McIntosh for

9   similar reasons.  The Secretary notes Ms. Martin's EEO work and Ms. Hunsaker's sign language

10  interpretation in the EEO office and training branch.  The Secretary contends that such experience was

11  "counted" to assign Ms. Martin and Ms. Hunsaker the appropriate GS level.  The Secretary further notes

12  that as EEO counselors, Ms. Martin and Ms. Hunsaker "had different responsibilities and thus different

13  experience factors."  For jobs to be "material" in all respects, they need not be identical but "must be

14  similar in all relevant respects."  *Grosz v. Boeing Co.*, 455 F.Supp.2d 1033, 1040 (C.D. Cal. 2006);

15  *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008) (male employees were not similarly

16  situated to female plaintiff because they held different positions with separate responsibilities and

17  supervisors and the few employees with comparable job descriptions lacked the differentiating

18  circumstances of having excessive unexcused absences or having sustained a work-related injury).  The

19  Secretary argues that Mr. McIntosh offers no evidence to dispute Ms. Martin and Ms. Hunsaker's work

20  experience.

21  Mr. McIntosh ignores the similarly situated aspect of his prima facie case and jumps to the more

22  favorable treatment aspect.  Mr. McIntosh argues that his EEO counselor collateral duty over eight years

23  rendered him more experienced than Mr. Leal, Ms. Sharp, Ms. Hunsaker, and Ms. Horg.  Mr. McIntosh

24  focuses on an acknowledged "collateral duty," not core job duties which the national office used to

25  evaluate Mr. McIntosh and others.  Nothing appears in the record to afford the weight which Mr.

26  McIntosh assigns to his collateral duty.  In his deposition, Mr. Leal explained that collateral EEO

27  counseling arose with "a surplus of cases and not enough counselors" to enlist the assistance of collateral

28  duty counselors with "EEO training – counselor training."  Mr. Leal noted he handled no more than four

1   or five cases a year.  Given the lack of meaningful devotion to collateral counseling, it is not a material

2   aspect of Mr. McIntosh and the others' jobs to support the similarly situated element.  In the absence of

3   a evidence to create a factual issue regarding similarly situated employees, Mr. McIntosh lacks a prima

4   facie discrimination case.

5                                   **Retaliation**

6         Title VII prohibits an employer "to discriminate against any of his employees or applicants for

7   employment . . . because he has opposed any practice made an unlawful employment practice by this

8   subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

9   investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The Secretary

10  challenges Mr. McIntosh's retaliation claim based on the time gap between his protected activity and

11  his GS level decisions and in the absence of evidence that a decision maker knew of his protected

12  activity.

13                              *Prima Facie Case*

14        To make out a retaliation prima facie case, a plaintiff must demonstrate that:

15        1.     He/she engaged in protected activity;

16        2.     He/she suffered an adverse employment action; and

17        3.     There was a causal link between his/her activity and the employment action.

18  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Brooks v. City of San*

19  *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

20        The Secretary identifies Mr. McIntosh's protected activity as his 1998 EEO complaint to criticize

21  promotion procedures, 1998 communications with the Fresno center personnel office regarding selection

22  criteria, and February 2000 communications with Fresno center director Ms. Hon.

23        The Secretary accepts the 1998 EEO complaint and February 2000 complaints as protected under

24  Title VII.  However, the Secretary challenges as protected Mr. McIntosh's 1998 communications with

25  the Fresno center personnel office in that there is no evidence that Mr. McIntosh's communications

26  related to race.  *Mun v. University of Alaska*, 291 Fed.Appx. 115, 117 (9th Cir. 2008) (finding no casual

27  nexus between protected activity and the retaliatory conduct when formal grievance did not contain "a

28  single reference to race, religion, or Title VII protections").

1    Mr. McIntosh does not argue that his 1998 EEO complaint and 1998 and February 2000

2    communications regarding selection criteria are protected activity to support his retaliation claim.  Mr.

3    McIntosh claims that his protected activity for which he was retaliated against was his complaining to

4    Mr. Leal of his entry GS 9 level.  As discussed above, any claim related to his entry GS 9 level was not

5    administratively exhausted to bar it.

6                    ***Decision Maker's Lack Of Knowledge Of Protected Activities***

7    The Secretary argues that there is no causal link between Mr. McIntosh's protected activity and

8    his GS levels in absence of Ms. Harris' knowledge of his protected activities or his September 2000

9    complaints to Mr. Leal about his entry GS 9 level.

10   "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the

11   inference that her protected activity was the likely reason for the adverse action. . . . Essential to a causal

12   link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."

13   *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *see Raad v. Fairbanks N. Star Borough*

14   *Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003) (in a Title VII case, "the plaintiff must make some

15   showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff

16   had engaged in protected activity"); *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149,

17   1155 (9th Cir.1982) (in a Title VII case, to have a viable retaliation claim for engaging protected activity,

18   the employee must show "that the employer was aware of the conduct" which constituted protected

19   activity); *see Morgan v. Regents of Univ. Of Cal.*, 88 Cal.App.4th 52, 70, 105 Cal.Rptr.2d 652 (2000)

20   ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the

21   protected activity.")

22   The Secretary notes Mr. McIntosh's concession that he did not inform Ms. Harris of his EEO

23   activity and the absence of his EEO activities on his EEO specialist application.  The Secretary points

24   to the absence of evidence that anyone at the national office involved in Mr. McIntosh's GS levels knew

25   of his protected activities.  The Secretary further notes Mr. McIntosh's lack of knowledge that anyone

26   at the Fresno center, including Ms. Hon, the recipient of his February 2000 communications, was

27   involved in his GS levels.  In a Title VII case, "the plaintiff must make some showing sufficient for a

28   reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected

activity." *Raad*, 323 F.3d at 1197.

The record lacks evidence that a decision maker knew of Mr. McIntosh's protected activity. As to Mr. McIntosh's complaints to Mr. Leal, there is no evidence that Mr. Leal is a decision maker or that Ms. Harris or anyone else in the national office knew of Mr. McIntosh's complaints to Mr. Leal. In fact, Mr. McIntosh declares that Mr. Leal asked Mr. McIntosh to allow Mr. Leal to address Mr. McIntosh's GS level and that Mr. Leal provided information to the national office to assist Mr. McIntosh to obtain his GS 11 level in December 2000. Nothing in the record indicates that Mr. Leal's information provided to the national office addressed Mr. McIntosh's complaints. Mr. McIntosh offers no evidence to raise a factual issue as to a causal link between his protected activity and his GS level determination.

### *Proximity*

The Secretary further challenges Mr. McIntosh's retaliation claim given the time lag between his 1998 EEO complaint and February 2000 complaints and the August and December 2000 GS level decisions.

To support an inference of retaliatory motive, the adverse action must have occurred "fairly soon after the employee's protected expression." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir.2000). "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). "[E]vidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507.

"A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)); *see Miller v. Fairchild Industries, Inc.,* 885 F.2d 498, 505 (9th Cir.1989) (discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation).

The Secretary points to six and nine-month gaps between Mr. McIntosh's February 2000 communications and the August and December 2000 GS level decisions. The Secretary notes the "even greater" gap between Mr. McIntosh's 1998 protected activity and the GS level decisions. *See Cornwell*

17

1  *v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (gap between plaintiff's complaint

2  in November 2001 plaintiff's termination in July 2002 "was too great to support an inference that

3  [plaintiff's] complaints caused his termination").

4       Mr. McIntosh appears to concede that his 1998 and 2000 protected activities are too remote to

5  support a retaliation claim.  Although Mr. McIntosh identifies no date when he complained to Mr. Leal

6  about the entry GS 9 level, any claim based on his entry GS 9 level is barred, as explained above, for

7  failure to exhaust administratively and in the absence of decision maker knowledge of his complaints

8  to Mr. Leal.

9  **Legitimate Reasons**

10       The Secretary contends that the IRS had a "legitimate, non-discriminatory basis" for Mr.

11  McIntosh's GS 9 and 11 levels.  Mr. McIntosh responds that discrepancies regarding "specialized

12  experience" raise factual issues as to the legitimacy of the IRS' reasons.

13       If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some

14  legitimate, nondiscriminatory reason" for adverse employment action.  *McDonnell Douglas Corp.,* 411

15  U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281;

16  *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379; *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66

17  Cal.Rptr.2d 830, 835 (1997).

18       "The defendant's burden at this stage is one of production, not persuasion. The court may not

19  make a credibility assessment."  *Njenga v. San Mateo County Superintendent of Schools*, 2010 WL

20  1261493, at *14 (N.D. Cal. 2010) (citing *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

21  142, 120 S.Ct. 2097 (2000)).  "The defendant need not persuade the court that it was actually motivated

22  by the proffered reasons."  *Burdine*, 450 U.S. 254, 101 S.Ct. 1089.

23       To support the IRS legitimate, non-discriminatory grounds, the Secretary relies on Ms. Harris'

24  explanation to assign Mr. McIntosh the GS 9 and 11 levels, "including looking at whether he had

25  specific prior EEO experience."  The Secretary notes Mr. McIntosh's collateral EEO experience to

26  volunteer for EEO projects or duties was insufficient to promote him to a GS 12 level "based on past

27  experience."  The Secretary further notes that Ms. Harris graded Mr. McIntosh at a GS 9 level based on

28  his original application materials.  The Secretary points out that Ms. Harris qualified Mr. McIntosh at

a GS 11 level effective December 31, 2000 after Mr. Leal "submitted additional information that better explained his prior EEO activities."  The Secretary further points to additional layers of review of the GS 11 level increase by national office manager Ms. Banks who "had a Senior Staffing Specialist and another manager review McIntosh's package" to concur with the GS 11 level.  Moreover, the Secretary points to Ms. Harris' explanation that Mr. McIntosh's "race had nothing to do with her grade level determinations."

Mr. McIntosh contends that no specialized experience was required for a GS 12 level.  Mr. McIntosh points to comments attributed to Senior Personnel Management Specialist Pamela Mendenhall ("Ms. Mendenhall") that:

1.    "[C]redit was given for any EEO experience that the applicant had"; and

2.    In "Mr. McIntosh's particular case, time in grade and his previous EEO experience is what qualified him for the grade 12 position even though percentages of time spent performing EEO duties was [sic] not specific."

Mr. McIntosh argues that Ms. Harris and Ms. Mendenhall's different views on specified experience create a triable issue of material fact.

Mr. McIntosh also contends that a factual issue arises regarding experience acquired at the next lowest grade level.  Mr. McIntosh points to Ms. Mendenhall's comment in a January 29, 2001 email that "We also gave credit, if the applicant was a manager."  Mr. McIntosh points to his 20 months of managerial experience preceding his EEO specialist position.

The Secretary responds that Mr. McIntosh merely attempts to explain his qualifications and why Ms. Harris made an incorrect decision based on his qualifications.  The Secretary notes that the correctness of Ms. Harris' GS level assignment is irrelevant to discrimination and retaliation because it does not address Mr. McIntosh's race or protected activity.  "Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).

The Secretary continues that Ms. Mendenhall's evaluation is likewise irrelevant in that does not address Mr. McIntosh's race or protected activity.  The Secretary points out that Mr. McIntosh ignored Ms. Mendenhall's additional email comments:

19

1        In looking back on the qual[ification] determinations, I believe we would have required more information from the applicant.  If they were a counselor, we should have asked for the percentage of time spent on these duties.  This would have given a more accurate account of their experience and qualifications for the position.  We also would have verified that the experience was gained at the next lower grade (GS-11 in this case).

Ms. Mendenhall further noted being "somewhat lenient" in Mr. McIntosh's ranking.  The Secretary points out that based on his EEO specialist application, Mr. McIntosh acquired his EEO experience in 1998, well prior to his GS 11 level manager position.  The Secretary concludes that there is no triable issue of material fact as to whether Ms. Harris or Ms. Mendenhall "got it" right or wrong.

As discussed above, Mr. McIntosh fails to establish prima facie discrimination or retaliation. Nonetheless, putting that aside, Mr. McIntosh's attempts to create a credibility determination are unavailing.  As noted above, the Secretary's burden is one of production, not credibility.  Moreover, Mr. McIntosh fails to demonstrate how Ms. Mendenhall's comments question the legitimacy of IRS' reasons. Ms. Mendenhall noted that Mr. McIntosh was credited with his limited, collateral EEO duty.  Of further note, Ms. Mendenhall works in a Laguna Nigel, California IRS personnel office, and Ms. Harris of the national office noted that qualifications in her office "are done by the guidelines, but are still open to interpretation, which is why Laguna Nigel did the qualifications differently."  At most, Mr. McIntosh shows a difference of interpretation by different IRS personnel offices.  This Court is not in a position to assess the IRS personnel standards and guidelines.  Moreover, Mr. McIntosh's GS 12 qualification for a different position militates against purported IRS discrimination or retaliation.

**Pretext**

The Secretary holds Mr. McIntosh "to show that the proffered reasons are false and that the real reason was on account of his race and prior EEO activity."  Mr. McIntosh again relies on the differing interpretations of Ms. Harris and Ms. Mendenhall: "We have two IRS Personnel specialists saying conflicting things about whether or not McIntosh qualified as a GS-12 EEO Specialist."

"If the defendant offers admissible evidence of a legitimate, nondiscriminatory reason for the claimed adverse action, the *McDonnell Douglas* framework and its presumption of discrimination disappears, and the plaintiff is left to prove by a preponderance of the evidence that the reasons offered by the defendant are merely a pretext for discrimination [or retaliation]."  *Njenga*, 2010 WL 1261493, at *14 (citing *see Reeves*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000)).  The "critical" issue at the pretext

stage is whether the plaintiff produces "sufficient evidence to raise a triable issue of fact as to whether the reason proffered by [employer] for denying her the promotion was a pretext for unlawful retaliation or discrimination. *Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001); *see Manatt v. Bank of America,* N.A., 339 F.3d 792, 801 (9th Cir. 2003) ("Because [plaintiff] failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the [defendant] must be affirmed."); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (failure to "produce any specific, substantial evidence of pretext" support summary judgment for employer); *Brundage*, 57 Cal.App.4th at 236, 66 Cal.Rptr.2d at 835.

"In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce 'specific, substantial evidence of pretext.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (quoting *Steckl*, 703 F.2d at 393. In other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Steckl*, 703 F.2d at 393. A "plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent." *Crawford v. MCI Worldcom Communications, Inc.*, 167 F.Supp.2d 1128, 1135 (S.D. Cal. 2001).

The Secretary argues that Mr. McIntosh "has no evidence of pretext." The Secretary notes the absence of evidence that Ms. Harris considered Mr. McIntosh's race or prior EEO activity or that the national office knew of Mr. McIntosh's race, prior EEO activity or communications with Ms. Hon, especially since neither his race nor prior EEO activity was addressed in his EEO specialist application or Mr. Leal's communications to help secure the GS 11 level increase. The Secretary points to Mr. McIntosh's lack of evidence of Fresno center involvement with the national office as to Mr. McIntosh's GS levels other than Mr. Leal's assistance.

The Secretary contends that Mr. McIntosh discrimination and retaliation claims are based "almost entirely on his own belief that his prior collateral duty experience and the fact that he was a manager before becoming the EEO Specialist justified a GS 12 level." The Secretary characterizes as irrelevant Mr. McIntosh's belief that his qualifications warranted a higher GS level. *See Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (plaintiff's feelings of competence and confidence in her skills were "subjective personal judgments" insufficient to raise a genuine issue

1    of material fact as to pretext); *see also Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (age

2    discrimination plaintiff's "perception of himself, however, is not relevant. It is the perception of the

3    decision maker which is relevant.")

4        The Secretary further argues that "wrong decisions" as to Mr. McIntosh's GS levels do not

5    demonstrate pretext in that "the plaintiff cannot simply show that the employer's decision was wrong

6    or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer,

7    not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765

8    (3rd Cir. 1994). The Secretary characterizes Mr. McIntosh's discrimination claim as "nothing more than

9    speculation or uncorroborated allegations" given the absence of evidence that the national office knew

10    of Mr. McIntosh's race or prior EEO activity.

11       The Secretary presents meritorious points on pretext. Mr. McIntosh points to no specific,

12    substantial evidence of pretext for discrimination or retaliation. Nothing gives rise to an inference that

13    a decision maker considered Mr. McIntosh's race or protected activity. Mr. McIntosh attempts to

14    manufacture pretext based on differing interpretation and application of guidelines as to his GS level.

15    The absence of a factual issue as to pretext further dooms Mr. McIntosh's discrimination and retaliation

16    claims.

17                          **<u>Lost Wages</u>**

18       The Secretary argues that a potential back pay award for Mr. McIntosh is limited to $6,324.67,

19    not the $39,378 he claims.

20       For Title VII claims, "back pay remains an equitable remedy to be awarded by the district court

21    in its discretion." *Lutz v. Glendale High School*, 403 F.3d 1061, 1069 (9th Cir. 2005).

22       Effective August 13, 2000, Mr. McIntosh held a GS 9 level with at $43,793 salary. Effective

23    December 31, 2000, he was a GS 11 level with a $47,412 salary increased to $49,102 effective January

24    14, 2001. Effective July 15, 2001, Mr. McIntosh increased to a GS 12 level with a $53,657 salary. The

25    Secretary contends that Mr. McIntosh is limited to claim underpayment only from August 13, 2000 to

26    July 15, 2001 to total $6,324.67 based on four months at GS 9 in 2000 and 7.5 months at GS 11 during

27    2001. The Secretary explains that the differences between GS 9 and GS 12 salaries in 2000 is $3,288

28    and GS 11 and 12 salaries in 2001 is $3,036.67.

1   The Secretary characterizes as "unclear" Mr. McIntosh's calculation of $39,378 lost wages.  The

2   Secretary notes that a one-year delay to reach the GS 12 level salary is not subject to "some sort of

3   multiplier effect" which would be "unduly speculative."  *See Christopher v. Stouder Memorial Hosp.*,

4   936 F.2d 870, 880 (6th Cir. 1991) ("While back pay in a Title VII case need not be proven with the

5   exactitude . . . neither can such an award be appropriately founded on mere speculation."); *McKenna v.*

6   *City of Philadelphia*, 636 F.Supp.2d 446, 459 (E.D. Pa. 2009) (finding "banked" vacation and sick time

7   too speculative to support back pay award).

8   The Secretary contends that Mr. McIntosh is foreclosed to advocate "a new basis for his

9   damages claims at this late date."  F.R.Civ.P. 26(a)(1)(A)(iii) requires initial disclosures of "a

10   computation of each category of damages claimed by the disclosing party."  F.R.Civ.P. 26(e)(1)(A)

11   requires a disclosing party to supplement prior disclosures "in a timely manner."  F.R.Civ.P. 37(c)(1)

12   punishes failure to comply with F.R.Civ.P. 26(a) disclosure requirements by disallowing use of

13   undisclosed information "on a motion, at a hearing, or at trial, unless the failure was substantially

14   justified or is harmless."  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use . . . of

15   any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly,*

16   *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (footnote reference omitted); *see*

17   *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179-1180 (9th Cir. 2008)

18   ("Disclosure of damage calculations was mandated under Rule 26(a) and . . . failure to disclose was not

19   substantially justified.")

20   Mr. McIntosh abandons his lost wages claim in absence of meaningful opposition to the

21   Secretary's meaningful points as to Mr. McIntosh's inability to recover back pay.  Mr. McIntosh's back

22   pay claims fail with his discrimination and retaliation claims.

23   **Compensatory Damages**

24   The Secretary argues that Mr. McIntosh is entitled to no more than "garden variety" emotional

25   distress damages.

26   Under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1), "a Title

27   VII plaintiff who wins a back pay award may also seek compensatory damages for future pecuniary

28   losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other

1   nonpecuniary losses." *Landgraf v. USI Film Products*, 511 U.S. 244, 253, 114 S.Ct. 1483 (1994)

2   (internal quotation marks and citation omitted). In *Carey v. Piphus*, 435 U.S. 247, 255-56, 98 S.Ct. 1042

3   (1978), the U.S. Supreme Court held that compensatory damages, such as for emotional harm caused

4   by the deprivation of constitutional rights, may be awarded only when the claimant submits proof of

5   actual injury. Although *Carey* refers to damage awards under 42 U.S.C. § 1983, its reasoning and

6   standards apply to Title VII emotional distress claims. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1053

7   (5th Cir. 1998); *see Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1121 (3rd Cir. 1988) (plaintiff in

8   a corresponding 42 U.S.C. § 1981 action "must present evidence of actual injury, however, before

9   recovering compensatory damages for mental distress"); *Ramsey v. American Air Filter Co.*, 772 F.2d

10  1303, 1313 (7th Cir.1985) ("competent evidence" must support award for compensatory damages in §

11  1981 action). "[S]peculative damages will not be awarded" in Title VII cases. *Gunby*, 840 F.2d at 1121.

12      The Secretary argues that Mr. McIntosh is unable to pursue claims for medical treatment during

13  2000-2004 in the absence of evidence of a causal connection with his 2000 GS levels. The Secretary

14  notes the absence of a connection between Mr. McIntosh's GS levels and his claims of seeing a

15  psychiatrist three or four times in 2002 or 2003 and taking sleeping pills for a few months. The

16  Secretary notes the passage of two or more years between alleged discrimination/retaliation and Mr.

17  McIntosh's medical treatment. The Secretary attributes Mr. McIntosh's purported emotional distress

18  to pursuit of an April 2001 administrative class action.

19      The Secretary further faults Mr. McIntosh's failure to provide expert opinion to support his

20  compensatory damages claims. The Secretary argues that Mr. McIntosh is foreclosed in the absence of

21  F.R.Civ.P. 26(a)(2)(A) disclosures to offer expert opinion. The Secretary continues that his defense

22  would be prejudiced if Mr. McIntosh were permitted to provide expert opinion in disobedience of expert

23  disclosure requirements.

24      A fellow district court has explained the need to disclose treating physicians:

25          Courts generally allow expert testimony by treating physicians without need for
        a report, provided that the opinions do not extend beyond treatment. *See Fielden v. CSX
26      Transp. Inc.*, 482 F.3d 866, 870-71 (6th Cir.2007) (holding that a formal report is not
        required when determining causation is an integral part of treating a patient); *see also
27      Watson v. United States*, 485 F.3d 1100, 1107 (10th Cir.2007). Nevertheless, even if a
        party elects to call a physician to testify solely to the treatment, the party **must** still,
28      consistent with the court's scheduling order, **disclose** that person as someone he or she

24

1    intends to call as an expert. *See Musser v. Gentiva Health Services*, 356 F.3d 751, 757-58
2    (7th Cir.2004). "Disclosing a person as a witness and disclosing a person as an expert
     witness are two distinct acts." *Id.* The court held that "[f]ormal disclosure of experts is
3    not pointless. Knowing the identity of the opponent's expert witnesses allows a party to
     properly prepare for trial. [The defendant] should not be made to assume that each
     witness disclosed by the [plaintiffs] could be an expert witness at trial." *Id.*
4

5    *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1159-1160 (E.D. Wash. 2009) (bold added).

6        With expert opinion barred, the Secretary seeks to limit support for emotional distress to Mr.

7    McIntosh's testimony to render his emotional distress claim as "garden variety."

8        In evaluating the reasonableness of a non-economic damages award in discrimination suits,

9    courts often examine the duration, extent and consequences of mental anguish suffered by the plaintiff

10   to determine whether the case is a "garden variety" mental-anguish claim, in which awards "hover in

11   the range of $5,000 to $30,000." *Kinneary v. City of New York*, 536 F.Supp.2d 326, 331 (S.D. N.Y.

12   2008); *see Rainone v. Potter*, 388 F.Supp.2d 120, 122 (E.D. N.Y. 2005) (low end "garden variety"

13   distress claims range from $5,000 to $35,000). "'In such cases, the evidence usually is limited to the

14   testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents

15   minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or

16   consequences of the condition.'" *Kinneary*, 536 F.Supp.2d at 331 (quoting *Reiter v. Metropolitan*

17   *Transp. Auth. of New York,* 2003 WL 22271223, at *9 (S.D. N.Y. 2003)). "[C]ourts scrupulously

18   analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on

19   the plaintiff's testimony." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996).

20       The Secretary concludes that Mr. McIntosh is limited to no more than "garden variety" emotional

21   distress "based only on the limited evidence of his own testimony."

22       With the failure of Mr. McIntosh's discrimination and retaliation claims, his alleged

23   compensatory damages and evidence to support them are no longer at issue.   Mr. McIntosh's

24   compensatory damages claims fail with his discrimination and retaliation claims, and Mr. McIntosh

25   offers nothing to substantiate purported compensatory damages.

26                              **CONCLUSION AND ORDER**

27       For the reasons discussed above, this Court:

28       1.       GRANTS the Secretary summary judgment;

2.      DIRECTS the clerk to enter judgment in favor of Treasury Secretary Tim Geithner and

against plaintiff Percy McIntosh and to close this action; and

3.      VACATES the July 12, 2011 pretrial conference and September 12, 2011 trial in this

action.

IT IS SO ORDERED.

**Dated:      May 31, 2011**                              **/s/ Lawrence J. O'Neill**
                                                                      UNITED STATES DISTRICT JUDGE